STATE OF NORTH CAROLINA v. MARIO ELLIOTT STOVER

No. COA09-229

(Filed 3 November 2009)

**1. Sentencing— active sentence completed—mootness**

Defendant's argument that the active portion of his sentence exceeded statutory limits was moot where defendant had completed the sentence and did not argue collateral adverse legal circumstances.

**2. Search and Seizure— olfactory recognition of marijuana—defendant fleeing—probable cause and exigent circumstances**

The trial court did not err by admitting marijuana and drug paraphernalia found in defendant's house where officers had both probable cause and exigent circumstances to enter the house. An officer's olfactory recognition of marijuana is as reliable as an officer's visual recognition and defendant was partially out of a window in the back of the house when officers arrived.

**3. Search and Seizure— voluntariness—evidence sufficient**

Even though the facts were not entirely consistent, the evidence was sufficient to support the trial court's determination that defendant voluntarily consented to a search of his house.

**4. Confessions and Incriminating Statements— pre-Miranda statements—not solicited**

The trial court properly denied defendant's motion to suppress his pre-*Miranda* statements to officers where there was competent evidence for the court to find and conclude that defendant's comments were not solicited and were not products of interrogation by police.

Judge STEELMAN concurring.

Appeal by defendant from judgments entered 15 August 2008 by Judge C. Preston Cornelius in Buncombe County Superior Court. Heard in the Court of Appeals 2 September 2009.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Daniel S. Johnson, for the State.*

*Leslie C. Rawls, for defendant-appellant.*

JACKSON, Judge.

Mario Elliott Stover ("defendant") appeals his 15 August 2009 convictions for misdemeanor possession of drug paraphernalia; felony maintaining a dwelling for using a controlled substance, marijuana; and possession with intent to sell and deliver marijuana. For the reasons stated below, we affirm.

During a traffic stop on 10 January 2008, Asheville police officers Maltby and Dotson noticed a passenger in the car attempt to put a bag of marijuana into her pocket. The officers asked her about the drugs, and she ("informant") described to them the house at which she had purchased the marijuana. Officer Maltby then radioed other officers from the Drug Suppression Unit to go to the house and conduct a "knock and talk." At this point the officers did not have a search warrant for the house nor did they have sufficient evidence for a search warrant. Officer Brown, accompanied by Officers Crisp and Breneman, used the description that the informant had provided to Officer Maltby to identify 218 Fayetteville Street, defendant's residence.

When they exited their vehicles, Officers Crisp and Brown perceived a "strong odor of marijuana," which grew stronger as they approached the house. Officer Crisp heard a noise at the rear of the house and entered the backyard, where he observed a black male whose entire upper torso was out of a window. Defendant argues that he was looking out of the window because his neighbor had called to him, and defendant's neighbor testified that defendant was at the window but was not "hanging out" of it, as described by the police. Officer Crisp drew his gun and aimed it at defendant, which he stated was a precaution because narcotics cases often involve weapons. Defendant said, "Don't shoot me. I'm not going anywhere." Officer Crisp asked defendant his name to which defendant replied, "Mario Stover." The officer then lowered his gun but did not holster it.

Officer Crisp radioed to Officers Brown and Breneman that he had a subject hanging out a back window. Officer Breneman joined Officer Crisp in the backyard. Officer Breneman asked Officer Crisp if everything was okay, and defendant stated, "Yeah, everything's just fine. I've just got weed. I've got weed." Officer Crisp asked defendant why he was hanging out of the window, to which defendant responded, "Man, I've got some weed." Officer Crisp asked whether that was the only reason that defendant was hanging out of the window, and defendant responded, "Yeah, that's the only reason. I have a

lot. It's right here beside me. Come and get it." Officer Crisp told defendant not to go anywhere and that an officer would be entering through the front door.

Officer Brown then kicked in the front door and went to the back of the house where defendant was located. He walked through a bedroom, in which there was a small child, and into the bathroom where defendant was located. He pulled defendant back inside. Officer Brown patted down and frisked defendant and told the other officers that they could come inside. Defendant and an officer went to the living room while the other officers conducted a protective sweep of the house. Defendant was not handcuffed. Officer Brown walked defendant across the street and back in order that he could ask his neighbors to care for the child. During the protective sweep, officers observed sandwich bags, digital scales, and marijuana in several locations. These items were in plain view. The officers also searched areas that were large enough for a person to hide and did not move any furniture.

Officers Maltby, Dotson, and Ward then arrived on the scene. They also smelled a strong odor of marijuana, which increased as they approached the house. When the officers entered the house, defendant was in the living room. According to Officer Maltby, defendant was a known street-level dealer in the area. While in the living room, defendant stated that he had been selling marijuana for years and knew it was about time for him to be caught. He also said that he sells "weed" to feed his children but does not sell crack cocaine or rob people. Officer Maltby placed defendant in handcuffs and read him his *Miranda* rights. Defendant waived those rights.

Officer Crisp advised defendant that he was going to bring his drug-sniffing dog into the bathroom, based upon defendant's earlier comment that he had "weed" in the bathroom with him. Defendant said, "Okay." Officer Crisp's dog alerted to the bathtub, where two gallon bags containing a green leafy substance were located. The dog also alerted to the front bedroom. Officers Brown and Ward each asked defendant if they could search the rest of the house, and defendant consented. Following this consent, Officer Crisp's dog alerted to the chest-of-drawers in the front bedroom and to the closet door. Officers Brown, Ward, and Dotson searched the house. They collected approximately 384 grams of marijuana in several bags from the bathroom tub, the bedroom closet, a living room chair, and the top of the dresser in the front bedroom; digital scales and sandwich bags from the living room and front bedroom; and $2,072.00 in

cash from the front bedroom. Defendant was cooperative throughout this time.

Defendant was charged with (1) resisting a public officer, (2) misdemeanor possession of drug paraphernalia, (3) felony maintaining a dwelling for using a controlled substance, marijuana, and (4) possession with intent to sell and deliver marijuana. The prosecutor dismissed the resisting a public officer charge. Defendant was indicted by a grand jury for the remaining charges. He filed a motion to suppress the items seized in the search of his residence and the statements he made on the arrest day, 10 January 2008. Defendant reserved the right to appeal if he subsequently pled guilty. On 15 August 2008, the trial court denied the motion to suppress. Defendant then pled guilty to all three charges. Pursuant to his plea agreement, defendant's three offenses were consolidated into one judgment. The trial court sentenced him to six to eight months in prison. This sentence was suspended, with an intermediate sanction of a term of special probation of four months in the Department of Corrections. Defendant appeals.

[1] Defendant first argues that his active jail sentence of four months exceeded the statutory limit imposed by North Carolina General Statutes, section 15A-1351(a). Because we regard this issue as moot, we do not address it.

Generally, " 'this Court will not hear an appeal when the subject matter of the litigation . . . has ceased to exist.' " *In re Swindell*, 326 N.C. 473, 474, 390 S.E.2d 134, 135 (1990) (quoting *Kendrick v. Cain*, 272 N.C. 719, 722, 159 S.E.2d 33, 35 (1968)). Once a defendant is released from custody, "the subject matter of [that] assignment of error has ceased to exist and the issue is moot." *Id.* at 475, 390 S.E.2d at 135. However,

> "when the terms of the judgment below have been fully carried out, if collateral legal consequences of an adverse nature can reasonably be expected to result therefrom, then the issue is not moot[.]"

*State v. Black*, 197 N.C. App. 373, 375-76, 677 S.E.2d 199, 201 (2009) (quoting *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977)).

In the instant case, defendant already has served his four months of special probation. Furthermore, defendant has not argued to the Court any collateral adverse legal consequences that may result from the length of defendant's sentence. Therefore, we hold that the issue

of whether defendant's active sentence of four months exceeded the statutory limit is moot.

We note that the trial court most likely erred in its sentencing of defendant with respect to North Carolina General Statutes, section 15A-1351(a). However, counsel for defendant should have petitioned for a writ of *supersedeas* in order to stay defendant's sentence until the matter could be resolved. *See* N.C. R. App. P. 23 (2007). Without such a writ and with defendant's sentence already having been executed, the issue presently is moot.

Defendant's second argument centers on the trial court's denial of his motion to suppress the evidence seized and the statements made on the day of arrest. Defendant contends that the trial court erred in denying his motion to suppress because (1) the trial court's finding of fact that the officers "detected a strong odor of marijuana in the air" is inherently incredible, and therefore, cannot constitute competent evidence; (2) the trial court's findings of fact do not support its conclusions of law that officers had both probable cause and exigent circumstances in order initially to enter and search the house; (3) the officers intimidated defendant, rendering his consent to a more thorough search of the house invalid; and (4) defendant was entitled to his *Miranda* rights before they were given and any statements made before officers advised him of his *Miranda* rights were, therefore, inadmissible.

[2] Defendant's first contention regarding the denial of his motion to suppress is that the officers' smelling of non-burning marijuana, most of which was in sealed containers, is inherently incredible, and therefore, cannot constitute competent evidence. Second, he argues that the officers had neither probable cause nor exigent circumstances to enter the house as found by the trial court. We disagree on both counts and will address these two points together.

Initially, we note that findings of fact and conclusions of law are reviewed using different standards.

In reviewing the trial court's order following a motion to suppress, we are bound by the trial court's findings of fact if such findings are supported by competent evidence in the record; but the conclusions of law are fully reviewable on appeal.

*State v. Smith*, 346 N.C. 794, 797, 488 S.E.2d 210, 212 (1997) (citing *State v. Mahaley*, 332 N.C. 583, 592-93, 423 S.E.2d 58, 64 (1992), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 649 (1995)).

"An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence."

*State v. Hernandez*, 170 N.C. App. 299, 303-04, 612 S.E.2d 420, 423 (2005) (quoting *State v. Johnston*, 115 N.C. App. 711, 713, 446 S.E.2d 135, 137 (1994)).

"A warrantless search is lawful if probable cause exists to search and the exigencies of the situation make search without a warrant necessary." *State v. Mills*, 104 N.C. App. 724, 730, 411 S.E.2d 193, 196 (1991) (citing *State v. Allison*, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979)).

Probable cause exists where the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

*State v. Downing*, 169 N.C. App. 790, 795, 613 S.E.2d 35, 39 (2005) (quoting *State v. Earhart*, 134 N.C. App. 130, 133, 516 S.E.2d 883, 886 (1999)) (internal quotation marks omitted). "Plain smell of drugs by an officer is evidence to conclude there is probable cause for a search." *Id.* at 796, 613 S.E.2d at 39 (citing *State v. Trapper*, 48 N.C. App. 481, 484-85, 269 S.E.2d 680, 682, *appeal dismissed*, 301 N.C. 405, 273 S.E.2d 450 (1980), *cert. denied*, 451 U.S. 997, 68 L. Ed. 2d 856 (1981)).

[A]n exigent circumstance is found to exist in the "presence of an emergency or dangerous situation" and may include: a suspect's fleeing or seeking to escape, possible destruction of a controlled substance, and "the degree of probable cause to believe the suspect committed the crime involved[.]"

*State v. Frazier*, 142 N.C. App. 361, 368-69, 542 S.E.2d 682, 688 (2001) (quoting *State v. Guevara*, 349 N.C. 243, 250, 506 S.E.2d 711, 716 (1998), *cert. denied*, 526 U.S. 1133, 143 L. Ed. 2d 1013 (1999); citing *Mills*, 104 N.C. App. at 731, 411 S.E.2d at 197; quoting *Allison*, 298 N.C. at 141, 257 S.E.2d at 421).

Officers also may conduct a protective sweep of a residence in order to ensure that their safety is not in jeopardy. *See, e.g., State v.*

*Taylor,* 298 N.C. 405, 417, 259 S.E.2d 502, 509 (1979) ("The immediate need to ensure that no one remains in the dwelling preparing to fire a yet unfound weapon . . . constitutes an exigent circumstance which makes it reasonable for the officer to conduct a limited, warrantless, protective sweep of the dwelling."). "Moreover, it is well settled that where the officers' search is conducted during the course of 'legitimate emergency activities', they may seize evidence of a crime that is 'in plain view'." *State v. Phillips,* 151 N.C. App. 185, 192, 565 S.E.2d 697, 702 (2002).

In the instant case, the State does not argue that the officers had a warrant to search the house, nor does it contend that they had enough evidence for a warrant upon first arriving at the house. Our analysis, therefore, is constrained to whether the trial court's findings of fact support its conclusion of law that the officers gained probable cause as they approached the house and that exigent circumstances existed to authorize entrance into and a protective sweep of the house without a warrant.

The officers had identified defendant's house as matching the description provided by an informant, who stated that she had bought marijuana at that location. They were properly at defendant's house to conduct a "knock and talk" after having received information from a confidential informant. *See State v. Weakley,* 176 N.C. App. 642, 648, 627 S.E.2d 315, 319 (2006) (" '[O]fficers are entitled to go to a door to inquire about a matter; they are not trespassers under these circumstances.' ") (quoting *State v. Prevette,* 43 N.C. App. 450, 455, 259 S.E.2d 595, 600 (1979)). Two City of Asheville police officers testified that they perceived a "strong odor of marijuana" when they first arrived at the residence. Three other officers observed that same smell, albeit after the door to the residence was already down. Defendant argues that these officers could not have smelled the marijuana located inside defendant's residence, because it was not burning, the majority of the substance was in sealed containers, and what was loose was too small a quantity to be observable through the walls. However, the simple fact that the majority of the marijuana was in closed containers when the officers found it does not make the officers' smelling of the drug "inherently incredible."

Defendant points us to other jurisdictions that emphasize the importance of establishing an officer's experience with drugs in order for his identification to be the basis of probable cause. However, this Court has noted that "in our opinion, a trained law enforcement officer need not swear to his ability to recognize an illegal substance in

order for his observation to be deemed reliable[.]" *State v. Leonard,* 87 N.C. App. 448, 454, 361 S.E.2d 397, 400 (1987). Although *Leonard* dealt with an officer's visual recognition of marijuana, we believe that an officer's olfactory identification of the drug is equally reliable. Therefore, we hold that the officers' testimony that they smelled marijuana outside defendant's residence was competent evidence upon which the trial court could base its finding of fact that the officers "detected a strong odor of marijuana in the air." Furthermore, that finding of fact sufficiently supported the trial court's conclusion of law that the officers had probable cause to enter defendant's house and conduct a protective sweep.

In addition to probable cause, the situation must have presented exigent circumstances in order to justify the officers' entrance into defendant's house. When Officers Crisp and Brown arrived at the residence and after they smelled marijuana, Officer Crisp heard a noise from the back of the house and saw defendant, whose upper torso was partially out a window. Although defendant states that he simply had responded to a call from his neighbor, Officer Crisp could reasonably believe that defendant was attempting to flee the scene. The officers also stated that they were concerned about possible destruction of evidence, due to the smell of marijuana and defendant's possible attempted flight. These facts sufficiently support a conclusion that exigent circumstances existed at the time the officers gained entrance into defendant's house. We hold, therefore, that both probable cause and exigent circumstances existed when officers entered defendant's residence and conducted a protective sweep. Because the officers legally entered defendant's house and saw the evidence seized in plain view during their protective sweep, the trial court did not err in admitting that evidence.

[3] The third part of defendant's second argument—that the trial court erred in denying his motion to suppress—is that, based on the officers' intimidation of defendant, defendant's consent to the officers' search was involuntary. We disagree.

Consent "has long been recognized as a special situation excepted from the warrant requirement, and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given." *Smith,* 346 N.C. at 798, 488 S.E.2d at 213 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L. Ed. 2d 854 (1973)). "The only requirement for a valid consent search is the voluntary consent given by a party who had reasonably apparent authority to grant or withhold such consent." *State v. Houston,* 169 N.C.

App. 367, 371, 610 S.E.2d 777, 780 (2005) (citing N.C. Gen. Stat. §§ 15A-221-222 (2003)). "Neither our state law nor federal law requires that any specific warning be provided to the party whose property is to be searched prior to obtaining consent for the consent to be valid." *Id.* (citing *Schneckloth*, 412 U.S. at 234, 36 L. Ed. 2d at 867; *State v. Vestal*, 278 N.C. 561, 579, 180 S.E.2d 755, 767 (1971), *cert. denied*, 414 U.S. 874, 38 L. Ed. 2d 114 (1973)). "The mere fact that a person is in custody does not mean he cannot voluntarily consent to a search." *State v. Schiffer*, 132 N.C. App. 22, 29, 510 S.E.2d 165, 169 (1999) (citing *State v. Powell*, 297 N.C. 419, 426, 255 S.E.2d 154, 158 (1979)). "In determining whether consent was given voluntarily this Court must look at the totality of the circumstances." *Houston*, 169 N.C. App. at 371, 610 S.E.2d at 781 (citing *Schneckloth*, 412 U.S. at 226, 36 L. Ed. 2d at 862; *State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994)).

In the case *sub judice*, Officer Crisp initially aimed his gun at defendant when he perceived that defendant was attempting to flee the premises. However, he lowered it promptly. Though the officers kicked down the door as they entered defendant's house, they did not place him in handcuffs immediately. Rather, defendant sat in his own living room and conversed freely with various officers. One officer even escorted him to his neighbor's house in order to find someone to care for his child. Two officers asked defendant's permission to search the house after they had conducted their initial protective sweep. Defendant consented. Although these facts are not completely one-sided as to the issue of voluntariness, we hold that the evidence is sufficient to support the trial court's findings of fact and its determination that defendant's consent was voluntary.

[4] As the final portion of defendant's second argument regarding the trial court's denial of his motion to suppress, defendant contends that his statements should not have been found admissible because they were given prior to his being advised of his *Miranda* rights. We disagree.

" 'It is well established that *Miranda* warnings are required only when a [criminal] defendant is subjected to custodial interrogation.' " *State v. Smith*, 160 N.C. App. 107, 114, 584 S.E.2d 830, 835 (2003) (quoting *State v. Patterson*, 146 N.C. App. 113, 121, 552 S.E.2d 246, 253, *disc. rev. denied*, 354 N.C. 578, 559 S.E.2d 548 (2001)). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the

police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 114-15, 584 S.E.2d at 835 (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980)). "This is not to say, however, that all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." *Rhode Island,* 446 U.S. at 299, 64 L. Ed. 2d at 307. " 'Spontaneous statements made by an individual while in custody are admissible despite the absence of *Miranda* warnings.' " *Frazier,* 142 N.C. App. at 369, 542 S.E.2d 682, 688 (quoting *State v. Lipford,* 81 N.C. App. 464, 468, 344 S.E.2d 307, 310 (1986)).

In the instant case, the State does not contend that defendant was not in custody. The issue, therefore, is whether the police interrogated defendant prior to advising him of his *Miranda* rights, in violation of the Fifth Amendment.

Defendant's statements concerning the drugs in his possession and the length of time that he had been engaged in selling drugs occurred at various points throughout 10 January 2008. The first was after Officer Crisp had lowered his weapon in the backyard while defendant was at the back window. Officer Crisp asked defendant why he was hanging out of the window, and defendant responded, "Man, I've got some weed." The officer asked, "Is that the only reason you're hanging out of the window?" Defendant stated, "Yeah, that's the only reason. I have a lot. It's right here beside me. Come and get it." Although defendant was speaking in response to the officer's questions, he was not responding to the questions asked. Officer Crisp's question regarding defendant's position at the window likely was intended to ascertain the circumstances with which he was dealing, rather than to elicit an incriminating answer from defendant. Furthermore, defendant offered additional unsolicited statements to Officer Maltby when he entered the house later. Defendant said that he had been selling marijuana for years and that he knew it was about time to get caught. Defendant stated that he does not deal with crack cocaine or rob people and that he only sells marijuana in order to feed his children. Officer Maltby did not ask any questions to elicit such information. These facts and testimony that the trial court heard were competent evidence on which to base a finding of fact and conclusion of law that defendant's comments were not solicited and were not products of interrogation by the police. We hold, therefore, that the trial court properly denied defendant's motion to suppress and admitted defendant's voluntary statements.

[5] For defendant's third argument—that the trial court erred in denying his motion to suppress because defendant had not given valid consent to the search and the officers had neither probable cause nor a search warrant—he directs the Court to the contents of his second argument. We, similarly, refer to our analysis of defendant's second argument to address his third contention. We hold that the trial court did not err when it denied defendant's motion to suppress, because defendant's consent was valid and, in the absence of a warrant, the officers had probable cause and exigent circumstances.

We hold that the issue of whether the length of defendant's active sentence violated North Carolina General Statutes, section 15A-1351(a) is moot. We further hold that the trial court did not err in denying defendant's motion to suppress. Accordingly, we affirm.

Affirmed.

Judge McGEE concurs.

Judge STEELMAN concurs in a separate opinion.

STEELMAN, Judge concurring.

I concur in the majority opinion, but write separately to emphasize the following:

## I. Special Probation

It is clear that the trial court erred in imposing a term of special probation of four months in conjunction with a suspended sentence of six to eight months. N.C. Gen. Stat. § 15A-1351(a) provides that: "the total of all periods of confinement imposed as an incident of special probation, but not including an activated suspended sentence, may not exceed one-fourth the maximum sentence of imprisonment imposed for the offense . . . ." N.C. Gen. Stat. § 15A-1351(a) (2007). Thus, the maximum period of special probation that could have been imposed by the trial court was two months. The trial court further erred in the appellate entries in this case by denying release of defendant pending appeal. N.C. Gen. Stat. § 15A-1451(a) expressly provides: "When a defendant has given notice of appeal: . . . (4) Probation or special probation is stayed." N.C. Gen. Stat. § 15A-1451(a)(4) (2007). Thus, by statute, the four-month term of special probation was automatically stayed when defendant gave notice of appeal. N.C. Gen. Stat. § 15A-1451(a)(4).

While I seriously question the rationale of the cases holding that the above-cited errors are moot, I acknowledge that this Court is bound by those decisions. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989).