NO. COA13-710

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

    v.

GREGORY ELDER,
    Defendant.

Mecklenburg County
No. 10CRS246707-09

Appeal by defendant from judgment entered 18 December 2012 by Judge Linwood O. Foust in Superior Court, Mecklenburg County. Heard in the Court of Appeals 5 November 2013.

> *Attorney General Roy A. Cooper, III, by Assistant Attorney General Michael E. Bulleri, for the State.*
>
> *Michele Goldman, for defendant-appellant.*

STROUD, Judge.

Defendant appeals judgment entered upon his guilty plea after the denial of his motion to suppress. For the following reasons, we vacate the judgment and remand.

## I. Background

On 23 September 2010, based upon an action brought under North Carolina General Statute Chapter 50B by defendant's wife, Stacy Elder, the district court entered an ex parte domestic violence order of protection ("ex parte DVPO") against defendant. In the

ex parte DVPO, the district court found that on 22 September 2010, defendant had placed his wife in "fear of imminent serious bodily injury" and had threatened to "torch their son's preschool," among other threats of violence. The district court did *not* make any findings under finding 3 of the "ADDITIONAL FINDINGS"[1] portion of the ex parte DVPO on page 2, which would be a finding listing any "firearms, ammunition, and gun permits" to which defendant was "in possession of, owns or ha[d] access." The district court ordered several of the enumerated forms of relief under North Carolina General Statute § 50B-3, including the following provisions which are relevant for purposes of this case:

It is ORDERED that:

. . . .

12. the defendant is prohibited from possessing, owning or receiving[,] purchasing a firearm for the effective period of this Order[,] and the defendant's concealed handgun permit is suspended for the effective period of this Order. . . .

13. the defendant surrender to the Sheriff serving this order the firearms, ammunition, and gun permits described in Number 3 of the Findings on Page 2 of this Order and any other firearms and ammunition in the defendant's care, custody, possession, ownership or

---

[1] "ADDITIONAL FINDINGS" are optional findings on the form for the ex parte DVPO, AOC-CV-304 Rev. 8/09.

control.[2] . . .

. . . .

15. Other: (specify) . . .
Any Law Enforcement officer serving this Order
shall search the Defendant's person, vehicle
and residence and seize any and all weapons
found.

*See* N.C. Gen. Stat. § 50B-3 (2009).

This case arises from defendant's motion to suppress evidence found in his home when the officers served defendant with the ex parte DVPO, and the evidence seized as a result of the search pursuant to the ex parte DVPO led to the criminal charges for which defendant was convicted. The relevant events as found by the trial court are that between 23 September and 26 September officers had attempted several times, without success, to serve defendant with the ex parte DVPO. On 26 September 2010, a deputy sheriff "received a call from the dispatcher indicating that the defendant was at the residence[,]" and so "several deputies" went to the residence. The deputies knocked on the door "for a period of time" with no answer, and "[a]fter about 15 minutes, the defendant came to answer the door, and the defendant opened the door and slid out of the door, closing the door behind him." Defendant then locked

---

[2] As we have already noted, nothing was "described in Number 3 of the Findings on Page 2 of this Order[.]"

the deadbolt on the door. One of the deputies took defendant's "keys from the defendant's pocket and unlocked the door" and the officers entered the home to search the house in accord with "paragraph 15 of the domestic violence order." "[U]pon entry into the residence, a pungent odor of marijuana was smelled by the officers[,]" and ultimately they went downstairs and found marijuana.

At the hearing on the motion to suppress, the officers' testimonies are not consistent on many facts regarding the search of defendant's home, but they all seem to agree that they went to defendant's home not only to serve the ex parte DVPO but also to arrest defendant upon a valid arrest warrant for communicating threats, and defendant was indeed arrested upon this warrant. Yet we also note that the findings do not mention the existence of an arrest warrant for defendant, do not indicate that the officers arrested defendant based upon the arrest warrant, and do not state that any "firearms, ammunition, [or] gun permits" were seized. But the trial court's findings of fact are uncontested by either party, so they are the facts upon which we rely.[3]

---

[3] The State has not argued any alternative basis in law for the trial court's ruling, such as the arrest warrant, under North Carolina Rule of Appellate Procedure Rule 10(c).

As a result of the items seized during this search, defendant was indicted for possession of drug paraphernalia, maintaining a place to keep controlled substances, and manufacturing a controlled substance. On 8 October 2012, defendant made a motion to suppress "any and all physical evidence and any statements attributed to the defendant by the police as such evidence was obtained as the result of an illegal and unconstitutional search and seizure of the Defendant and his home" because

> the police had neither reasonable suspicion nor probable cause to search his home and no exceptions to the fourth amendment existed. Instead, the search was performed pursuant to an Ex Parte 50B order signed and dated 9/23/2012 by Judge Hoover in the Mecklenburg County District Court. The search authorized in the Ex Parte 50 B Order exceeded the statutory provisions in GS 50B-3.1 and has no other constitutional grounds constituting an exception to the 4th am[]e[n]dment.

Defendant's motion to suppress was denied, and on 18 December 2012, the trial court entered judgment upon defendant's guilty plea of all the charges; the trial court suspended defendant's sentence. Defendant appeals.

## II. Standard of Review

> It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. In

addition, findings of fact to which defendant failed to assign error are binding on appeal. Once this Court concludes that the trial court's findings of fact are supported by the evidence, then this Court's next task is to determine whether the trial court's conclusions of law are supported by the findings. The trial court's conclusions of law are reviewed *de novo* and must be legally correct.

*State v. Johnson*, ___ N.C. App. ___, ___, 737 S.E.2d 442, 445 (2013) (citation omitted).

## III. Motion to Suppress

Defendant contends that his motion to suppress should have been allowed because "[t]he North Carolina [a]nd United States Constitutions [b]oth [r]equired [o]fficers [t]o [o]btain [a] [v]alid [w]arrant [b]efore [e]ntering Mr. Elder's [h]ome." Defendant does not challenge the trial court's factual findings regarding this search but only its legal conclusion that "defendant's rights under the Fourth and Fourteenth Amendment have not been violated and that the officers acted pursuant to a valid Court order, valid at the time the officers followed the order as designated to them[;]" defendant raises this challenge pursuant to both the federal and state constitutions.

The State contends that defendant failed to argue violation of the North Carolina Constitution before the trial court such that his state constitutional challenge is not properly preserved

before this Court. We disagree, as we conclude that the State's argument is hyper-technical regarding the portions of the North Carolina Constitution defendant cited; it is clear that defendant argued before the trial court that his North Carolina constitutional rights were violated when law enforcement officers searched his home without a warrant or exigent circumstances. Accordingly, we will address defendant's North Carolina constitutional claim.

The State relies upon the ex parte DVPO as providing sufficient legal authority for this search, since the officers were simply carrying out the directive of the district court's ex parte DVPO, which directed that "[a]ny Law Enforcement officer serving this Order shall search the Defendant's person, vehicle and residence and seize any and all weapons found." The State contends that North Carolina General Statute § 50B-3(a)(13) "provided authority for the district court judge to issue the search provision in question." In the alternative, the State argues that if the ex parte DVPO did not properly authorize the search or if it is not sufficient to serve as a de facto "search warrant," the officers executed the ex parte DVPO under exigent circumstances and in good faith, and thus the exclusionary rule should not apply to exclude the items seized in the search.

The district court order in question is a civil ex parte domestic violence order of protection issued in an action completely unrelated to the current criminal action before us regarding the drug-related charges brought against defendant. The State was not a party to the ex parte DVPO, and no issues regarding that order are before us on appeal. Accordingly, we consider the ex parte DVPO as a valid district court order which was issued in an unrelated civil action.

Defendant contends that the law does not provide an avenue for converting the ex parte DVPO into a search warrant and despite the State's arguments, North Carolina General Statute § 50B-3(a)(13) does not provide authority for the district court to order a general search of a defendant's home without probable cause and without complying with "the provisions of N.C. Gen. Stat. §§ 15A-241 through -259."

North Carolina General Statute § 50B-3(a) sets out the relief which the district court may grant under Chapter 50B:

> (a)  If the court, including magistrates as authorized under G.S. 50B-2(c1), finds that an act of domestic violence has occurred, the court shall grant a protective order restraining the defendant from further acts of domestic violence. A protective order may include any of the following types of relief:
>
> (1)  Direct a party to refrain from such acts.

(2) Grant to a party possession of the residence or household of the parties and exclude the other party from the residence or household.

(3) Require a party to provide a spouse and his or her children suitable alternate housing.

(4) Award temporary custody of minor children and establish temporary visitation rights pursuant to G.S. 50B-2 if the order is granted ex parte, and pursuant to subsection (a1) of this section if the order is granted after notice or service of process.

(5) Order the eviction of a party from the residence or household and assistance to the victim in returning to it.

(6) Order either party to make payments for the support of a minor child as required by law.

(7) Order either party to make payments for the support of a spouse as required by law.

(8) Provide for possession of personal property of the parties, including the care, custody, and control of any animal owned, possessed, kept, or held as a pet by either party or minor child residing in the household.

(9) Order a party to refrain from doing any or all of the following:
    a. Threatening, abusing, or following the other party.
    b. Harassing the other party, including by telephone, visiting the home or workplace, or other

means.
b1.  Cruelly treating or abusing an animal owned, possessed, kept, or held as a pet by either party or minor child residing in the household.
c.   Otherwise interfering with the other party.

(10) Award attorney's fees to either party.

(11) Prohibit a party from purchasing a firearm for a time fixed in the order.

(12) Order any party the court finds is responsible for acts of domestic violence to attend and complete an abuser treatment program if the program is approved by the Domestic Violence Commission.

(13) Include any additional prohibitions or requirements the court deems necessary to protect any party or any minor child.

N.C. Gen. Stat. § 50B-3.

North Carolina General Statute § 50B-3.1, entitled "Surrender and disposal of firearms; violations; exemptions[]," has additional provisions which are relevant for our purpose of determining the extent of the district court's authority to order a general search of defendant, his vehicle, and his residence for weapons.

(a)  Required Surrender of Firearms. -- Upon issuance of an emergency or ex parte order pursuant to this Chapter, the court shall order the defendant to surrender to the

sheriff all firearms, machine guns, ammunition, permits to purchase firearms, and permits to carry concealed firearms that are in the care, custody, possession, ownership, or control of the defendant if the court finds any of the following factors:

(1) The use or threatened use of a deadly weapon by the defendant or a pattern of prior conduct involving the use or threatened use of violence with a firearm against persons.

(2) Threats to seriously injure or kill the aggrieved party or minor child by the defendant.

(3) Threats to commit suicide by the defendant.

(4) Serious injuries inflicted upon the aggrieved party or minor child by the defendant.

(b) Ex Parte or Emergency Hearing. -- The court shall inquire of the plaintiff, at the ex parte or emergency hearing, the presence of, ownership of, or otherwise access to firearms by the defendant, as well as ammunition, permits to purchase firearms, and permits to carry concealed firearms, and include, whenever possible, identifying information regarding the description, number, and location of firearms, ammunition, and permits in the order.

. . . .

(d) Surrender.--Upon service of the order, the defendant shall immediately surrender to the sheriff possession of all firearms, machine guns, ammunition, permits to purchase firearms, and permits to carry concealed firearms that are in the care,

custody, possession, ownership, or control of the defendant. In the event that weapons cannot be surrendered at the time the order is served, the defendant shall surrender the firearms, ammunitions, and permits to the sheriff within 24 hours of service at a time and place specified by the sheriff. The sheriff shall store the firearms or contract with a licensed firearms dealer to provide storage.

(1) If the court orders the defendant to surrender firearms, ammunition, and permits, the court shall inform the plaintiff and the defendant of the terms of the protective order and include these terms on the face of the order, including that the defendant is prohibited from owning, possessing, purchasing, or receiving or attempting to own, possess, purchase, or receive a firearm for so long as the protective order or any successive protective order is in effect. The terms of the order shall include instructions as to how the defendant may request retrieval of any firearms, ammunition, and permits surrendered to the sheriff when the protective order is no longer in effect. The terms shall also include notice of the penalty for violation of G.S. 14-269.8.

N.C. Gen. Stat. § 50B-3.1 (2009).

While North Carolina General Statute § 50B-3(a)(13) provides that the district court may "[i]nclude any additional prohibitions or requirements the court deems necessary to protect any party or any minor child" we cannot read "any" as broadly as the State suggests. N.C. Gen. Stat. § 50B-3(a)(13). We first note that

North Carolina General Statute § 50B-3(a)(13) must be read *in pari materia* with the rest of the relevant statutory provisions. *See Redevelopment Commission v. Bank*, 252 N.C. 595, 610, 114 S.E.2d 688, 698 (1960) ("It is a fundamental rule of statutory construction that sections and acts *in pari materia*, and all parts thereof, should be construed together and compared with each other.") North Carolina General Statute § 50B-3.1 contains very detailed provisions specifically addressing the authority of the district court as to the surrender, retrieval, return, and disposal of "all firearms, machine guns, ammunition, permits to purchase firearms, and permits to carry concealed firearms[.]" N.C. Gen. Stat. § 50B-3.1(a). North Carolina General Statute § 3.1 repeatedly uses the word "surrender" to describe what a defendant must do. "Surrender" is defined "to yield to the power, control, or possession of another upon compulsion or demand[.]" Merriam-Webster's Collegiate Dictionary 1258 (11th ed. 2003). Thus, a defendant is required "[u]pon service of the order" to "immediately" yield to the law enforcement officer "all firearms, machine guns, ammunition, permits to purchase firearms, and permits to carry concealed firearms[.]" N.C. Gen. Stat. § 50B-3.1(d). North Carolina General Statute § 50B-3.1 simply does not provide any basis for the district court to order a general search

of a defendant's person, vehicle, and residence for unspecified "weapons[.]" *See id.* If a defendant specifically refused a law enforcement officer's direct request, in accord with a court order, to surrender a weapon, this may present another issue, but here no such request was made. The district court exceeded its statutory authority by ordering a general search of defendant's person, vehicle, and residence for unspecified "weapons" as a provision of the ex parte DVPO under North Carolina General Statute § 50B-3(a)(13).

In addition, the State's argument implies that even if the district court lacked statutory authority pursuant to North Carolina General Statute § 50B-3(a)(13) to order the search, the ex parte DVPO could still serve as a valid search warrant. "[T]he power of the State to conduct searches and seizures is in derogation of . . . Article One, Section 20 of the North Carolina Constitution[.]" *Brooks, Comr. Of Labor v. Enterprises, Inc.*, 298 N.C. 759, 761-62, 260 S.E.2d 419, 421 (1979).

> Our Supreme Court has held that a governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement involving exigent circumstances. The North Carolina Constitution forbids general warrants whereby any officer or other person may be commanded to search suspected

places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence. The North Carolina Constitution requires that evidence discovered pursuant to an unreasonable search or seizure be excluded.

*State v. Cline*, 205 N.C. App. 676, 679, 696 S.E.2d 554, 556-57 (2010) (citations, quotation marks, and brackets omitted).

It is fundamental that a search warrant is not issued except upon a finding of probable cause. Probable cause means that there must exist a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender.

*State v. Lindsey*, 58 N.C. App. 564, 565, 293 S.E.2d 833, 834 (1982) (citation and quotation marks omitted).

The district court did not make any findings of fact or conclusions of law in the ex parte DVPO regarding probable cause to believe that the search "will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender." *Id.* The district court did not mention "probable cause" because the ex parte DVPO was entered in a civil proceeding, not a criminal matter, and the concept of "probable cause" is simply not applicable to this situation, between two private

parties. Although there may be many other reasons that an ex parte DVPO is not a *de facto* search warrant, one reason is that the district court made no determination regarding probable cause for the search. *Id.* Furthermore, without a proper search warrant, unless exigent circumstances existed, the objects seized during the search must be suppressed. *Cline*, 205 N.C. App. at 679, 696 S.E.2d at 556-57.

The State next contends that exigent circumstances existed because the officers needed to perform a "protective sweep" of the home. The State cites *State v. Stover*, 200 N.C. App. 506, 685 S.E.2d 127 (2009) in support of its argument. In *Stover*, officers went to do a "'knock and talk'" at a house identified by an informant as the place she had purchased marijuana. 200 N.C. App. at 507, 685 S.E.2d at 129. The officers had no warrant to search the house, but when they approached the house, they smelled "a 'strong odor of marijuana'" and saw the defendant, "whose entire upper torso was out of a window." *Id.* This Court stated:

> *In addition to probable cause,* the situation must have presented exigent circumstances in order to justify the officers' entrance into defendant's house. When Officers Crisp and Brown arrived at the residence and after they smelled marijuana, Officer Crisp heard a noise from the back of the house and saw defendant, whose upper torso was partially out a window. Although defendant states that he simply had responded

> to a call from his neighbor, Officer Crisp could reasonably believe that defendant was attempting to flee the scene. The officers also stated that they were concerned about possible destruction of evidence, due to the smell of marijuana and defendant's possible attempted flight. These facts sufficiently support a conclusion that exigent circumstances existed at the time the officers gained entrance into defendant's house. We hold, therefore, that both probable cause and exigent circumstances existed when officers entered defendant's residence and conducted a protective sweep. Because the officers legally entered defendant's house and saw the evidence seized in plain view during their protective sweep, the trial court did not err in admitting that evidence.

*Id.* at 513, 685 S.E.2d 132-33 (emphasis added).

There are some factual similarities between *Stover* and this case: officers approached a house in which they found marijuana, and at some point they smelled the marijuana, *see id.* at 507, 685 S.E.2d at 129, but the similarities end there. The State overlooks a crucial point in *Stover*: this Court first determined that "the officers had probable cause to enter defendant's house" before there was a need for a protective sweep. *Id.* at 513, 685 S.E.2d at 132. Here, the State does not contend, nor did the trial court conclude, that the officers had probable cause to suspect any particular criminal activity when they approached defendant's

home.[4]  In addition, the trial court made no findings as to any exigent circumstances or the need for a protective sweep.

At last, the State also contends that even if the ex parte DVPO did not properly authorize the search, and if there were no exigent circumstances to justify it, the "good faith exception" applies. There is no doubt that the officers acted entirely in "good faith" as they served the ex parte DVPO and fulfilled the directives of the district court, which included a general search of the defendant's person, residence, and vehicle.  While we agree that the good faith exception might have applied if defendant challenged this search only under the United States Constitution, defendant also challenges this search based upon the North Carolina Constitution, and there is a no good faith exception to the

---

[4] We note that while the testimony before the trial court indicates that officers arrested defendant at his home based upon a valid arrest warrant for communicating threats, the trial court did not address this issue at all in its findings of fact and the State makes absolutely no argument that the search of defendant's home was in any way related to his arrest or any other actual or suspected criminal activity.  Although it appears from the testimony at the hearing that the officers arrested defendant based upon a valid arrest warrant the State makes no argument that the search the officers conducted was incident to the arrest. We again note that the testimonies of the officers as to the details of the search were not consistent, but we must rely upon the facts as found by the trial court, which do not mention any arrest warrant. Furthermore, we again note, the State has not argued any alternative basis in law for the search.  The only arguments before this Court in support of the search are based upon the ex parte DVPO.

exclusionary rule applied as to violations of the North Carolina Constitution. *See State v. Carter*, 322 N.C. 709, 710-24, 370 S.E.2d 553, 554-62 ("We hold that there is no good faith exception to the requirements of article I, section 20 as applied to the facts of this case . . . . [I]t must be remembered that it is not only the rights of this criminal defendant that are at issue, but the rights of all persons under our state constitution. The clearly mandated public policy of our state is to exclude evidence obtained in violation of our constitution. This policy has existed since 1937. If a good faith exception is to be applied to this public policy, let it be done by the legislature, the body politic responsible for the formation and expression of matters of public policy. We are not persuaded on the facts before us that we should engraft a good faith exception to the exclusionary rule under our state constitution." (citation omitted)). In the Editor's Note of North Carolina General Statute § 15A-974, our legislature responded: "Session Laws 2011-6, s. 2, provides 'The General Assembly respectfully requests that the North Carolina Supreme Court reconsider, and overrule, its holding in *State v. Carter* that the good faith exception to the exclusionary rule which exists under federal law does not apply under North Carolina State law.'" N.C. Gen. Stat. § 15A-974, Editor's Note (2011). The legislature

specifically adopted a good faith exception in certain situations regarding statutory violations, but did not address constitutional violations, instead deferring to the Supreme Court in its session laws. *See* N.C. Gen. Stat. § 15A-974(a)(2). At this time, our Supreme Court has not overruled *Carter*, and "[w]e are bound by precedent of our Supreme Court[.]" *State v. Pennell*, ___ N.C. App. ___, ___, 746 S.E.2d 431, 441 (2013). We realize that the legislature recently adopted the session law requesting that the Supreme Court overrule *Carter* in 2011, and it is possible that the Court has not yet had an appropriate opportunity to address this issue. This case could potentially present such an opportunity, should the State petition for discretionary review of this ruling, but we are not permitted to anticipate or predict what the Supreme Court might do; we are bound by the existing precedent of *Carter*. *See id.* Accordingly, there is no good faith exception to the exclusionary rule as to violations of the North Carolina State Constitution.[5] *See Carter*, 322 N.C. 709, 710-24, 370 S.E.2d 553,

---

[5] We note that this Court has stated that it is unclear whether there is a good faith exception to the exclusionary rule for violations of the North Carolina Constitution; however, we believe the language of *Carter* is clear that such an exception does not currently exist. *See State v. Banner*, 207 N.C. App. 729, 732-33 n. 7, 701 S.E.2d 355, 358 n.7 (2010) ("This is known as the good-faith exception. The *Leon* Court explained that suppression of evidence is only required when doing so will further the goal of the exclusionary rule--deterrence. There is disagreement over

554-62.

As defendant's premises were searched without a search warrant and without exigent circumstances, and as the good faith exception does not apply to evidence obtained in violation of the North Carolina Constitution, we conclude that the wrongfully seized evidence should have been excluded; *see Cline*, 205 N.C. App. at 679, 696 S.E.2d at 556-57, accordingly, defendant's motion to suppress should have been allowed.

## IV.  Conclusion

For the foregoing reasons, we vacate the judgment entered upon defendant's guilty plea and remand this case for entry of an order allowing defendant's motion to suppress.

VACATED and REMANDED.

Judge MCGEE concurs.

Judge BRYANT dissents in a separate opinion.

---

whether there is such an exception to the North Carolina Constitution. Thus, it is possible that evidence not excluded by the federal constitution might be excluded by the North Carolina Constitution." (Citation and quotation marks omitted.)  Footnote seven goes on to provide, "*Compare Carter*, 322 N.C. at 722-24, 370 S.E.2d at 561-62 (refusing to allow a good-faith exception to the North Carolina Constitution with respect to non-testimonial identification orders), with *State v. Garner*, 331 N.C. 491, 506-08, 417 S.E.2d 502, 510-11 (1992) (rejecting the notion that Article I, Section 20 of the North Carolina Constitution provides more protection than the Fourth Amendment to the United States Constitution while approving the use of the inevitable discovery rule (Citation omitted.))."

NO. COA13-710

NORTH CAROLINA COURT OF APPEALS

Filed:  21 January 2014

STATE OF NORTH CAROLINA

    v.

GREGORY ELDER,
    Defendant.

Mecklenburg County
No. 10CRS246707-09

BRYANT, Judge, dissenting.


In vacating the trial court's judgment entered upon defendant's guilty plea and directing entry of an order allowing defendant's motion to suppress, the majority states that in issuing the 22 September 2010 DVPO order, the district court "exceeded its statutory authority by ordering a general search of the defendant's person, vehicle, and residence for unspecified 'weapons' as a provision of the ex parte DVPO under . . . . ' 50B-3(a)(13)." Because I believe the district court acted within its statutory authority, I respectfully dissent.

Pursuant to North Carolina General Statutes, section 50B-3,

> (a) If the court . . . finds that an act of domestic violence has occurred, the court shall grant a protective order . . . . A protective order may include any of the following types of relief: . . . (13) Include any additional prohibitions or requirements the court deems necessary to protect any party or any minor child.

N.C. Gen. Stat. ' 50B-3(a)(13) (2013).

In its 22 September 2010 DVPO, the Mecklenburg County District Court ordered law enforcement officers to "search the Defendant's person, vehicle and residence and seize any and all weapons found." The majority goes to great length to explain why it deems the general authority authorized by section 50B-3(a)(13) not broad enough to support the order. Specifically, the majority relies upon section 50B-3.1(a) as providing a limitation to the authority conferred to the court in section 50B-3(a)(13) by statutory construction rule to read statutory provisions *in pari materia*. However, the authority conferred in General Statutes section 50B-3(a)(13) is broader than that of section 50B-3.1. Where section 50B-3.1 provides a procedure for initially determining the likely existence of firearms and the surrender and disposal of firearms, section 50B-3(a)(13) authorizes a trial court to include in its protective orders "any . . . prohibitions or requirements the court deems necessary to protect any party or any minor child." N.C.G.S. ' 50B-3(a)(13).

In addressing whether the 22 September 2010 DVPO order was proper, the trial court made the following findings of fact:

> The domestic violence [protective] order was issued based on a finding by that Court that the defendant had threatened the plaintiff and that the defendant had threatened to get some

> gasoline and torch their son's preschool, her house, the plaintiff, and her sister's house and also stated that I'm going to get all of you and that "You won't f\*\*king stop me, the police won't f\*\*king stop me."
>
> The findings of fact also include the finding that the defendant had a history of substance abuse and mental illness and that the defendant also made threats to anyone attempting to go into the marital residence.

As noted, there was certainly probable cause to search incident to the lawful arrest for communicating threats, which was not considered by the trial court as a basis for the denial of the motion to suppress; likewise, the State did not argue that the search incident to service of the arrest warrant provided an additional basis. So, I will not further address it.

However, because the district court had authority to order the search of defendant's residence in its 22 September 2010 DVPO pursuant to section 50B-3(a)(13), the law enforcement officers acted properly in response to that authority such that the resulting search and seizure of contraband was proper. For this reason, I would affirm the order of the trial court denying defendant's motion to suppress the seizure of contraband from defendant's residence due to said search and leave undisturbed the trial court's judgment entered pursuant to defendant's plea of

guilty to the charges of manufacturing marijuana and possession of drug paraphernalia.