DIETZ, Judge.
Defendant Teddy Jabar Hargett appeals from convictions for multiple drug offenses involving multiple different illegal drugs. Hargett challenges the denial of his motion to suppress evidence obtained after officers approached the front door and then entered the side yard of the house he occupied without first obtaining a warrant. As explained below, we find no error.
Officers first observed two individuals sitting inside a parked car in a vacant lot late at night. By the time the officers approached the car, the driver was gone, but officers smelled a strong odor of "fresh, unburnt marijuana." The passenger in the car told the officers the driver had entered a nearby house.
Officers approached the house and, while still on the street, smelled a strong odor of burning marijuana coming from the house. They knocked on the door and announced themselves as police. The officers then heard loud noises that sounded like furniture being moved and heard toilets flushing. One officer then walked into the side yard of the home and looked through a window, where he observed Hargett moving repeatedly in and out of a bedroom and poking something through a hole in the floor. The officers then obtained a warrant and seized various incriminating evidence.
As explained below, these facts readily justify the officers' warrantless entry onto the front porch and into the side yard of the home under our Fourth Amendment precedent. Accordingly, the trial court properly denied Hargett's motion to suppress, and we thus find no error in the trial court's judgments.
Facts and Procedural History
While patrolling an area known for drug activity, Officer David Welch of the New Bern Police Department saw a car parked in a vacant lot, which was unusual. The officer saw two people sitting in the car.
Officer Welch met up with three other officers and approached the car on foot. As he approached the car, the officer smelled "a strong odor of raw, fresh, unburnt marijuana" coming from the open driver's side window. Once he arrived at the car, the officer saw that only the passenger remained.
Officer Welch asked the passenger, Kevin Arje, to step out of the vehicle. He noticed that the car was clean and well-kept except that the boot surrounding the gear shift had been popped off, which he recognized from his training and experience as a common place for hiding drugs. Officer Welch asked the passenger where the other person in the car had gone and Arje pointed to the house across the street.
Officer Welch asked the other officers to go to the house and try to speak to the driver. Sergeant Fuller, one of the other officers, smelled "an odor of burnt marijuana" coming from the house as he approached from the street. Officer Welch also smelled "a strong odor of burning marijuana coming from inside the residence." The officers stepped onto the front porch and knocked on the front door, announcing that they were police officers.
There were lights on inside the house, but the officers heard no noise as they knocked. After they knocked and announced their presence, the officers immediately heard what sounded like large objects being moved across the floor, running water, and flushing of toilets. Officer Welch could hear the locks on the door being manipulated, but no one answered the door. The officers believed that the occupants of the house may have been trying to conceal or destroy evidence.
While the other officers remained at the front door, Sergeant Fuller walked to the side of the house. He peered through a side window, saw Hargett, and called for him to go to the front door. As the officer continued to look through windows into the home, he saw Hargett enter and exit a bedroom at least three times and saw him poke an object through a hole in the floor.
Ultimately, the officers secured a warrant to search the house and recovered evidence of marijuana, cocaine, oxycodone, other illegal drugs, a firearm, and various drug trafficking paraphernalia.
The State indicted Hargett on charges of possession with intent to sell or deliver marijuana, possession with intent to sell or deliver cocaine, possession with intent to sell or deliver ecstasy, possession with intent to sell or deliver benzylpiperazine, possession with intent to sell or deliver oxycodone, maintaining a dwelling for the keeping or selling of a controlled substance, possession of drug paraphernalia, and possession of a firearm by a felon.
Hargett moved to suppress all evidence from the search of the house on the grounds that the officers' warrantless entry to the front porch and side yard violated his Fourth Amendment rights. The trial court denied the motion.
Hargett's case went to trial on 3 March 2015. Before trial, the State dismissed the charge of possession with intent to sell or deliver ecstasy. At the close of the State's evidence, the trial court dismissed the charge of maintaining a dwelling for the keeping or selling of a controlled substance. The jury found Hargett guilty of all of the remaining charges, and the trial court sentenced him to 22 to 45 months in prison. Hargett timely appealed.
Analysis
Hargett challenges the denial of his motion to suppress the evidence against him based on the officers' warrantless entry both to the front porch and to the side yard of the house.
Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).
I. Officers' entry onto the front porch and knock on the door
Hargett first asserts that the officers violated the Fourth Amendment when they approached the front porch of the house and knocked on the door because, given the late hour, that attempted knock-and-talk was unreasonable. As explained below, we disagree.
The Fourth Amendment protects against unreasonable searches. U.S Const. amend. IV. No unreasonable search occurs when "an officer is in a place where the public is allowed to be, such as at the front door of a house. It is well-established that entrance by law enforcement officers onto private property for the purpose of a general inquiry or interview is proper." State v. Lupek , 214 N.C. App. 146, 151, 712 S.E.2d 915, 919 (2011). But because an officer's right to approach the front door is no broader than any other member of the public, this type of "knock-and-talk" at a citizen's front door is limited by societal expectations. Florida v. Jardines , --- U.S. ----, ----, 133 S. Ct. 1409, 141-16 (2013). Thus, a number of courts have found late-night inquiries unreasonable because of the societal expectation that members of the public would not knock on one's front door in the middle of the night. See, e.g. , United States v. Lundin , 817 F.3d 1151, 1159 (9th Cir. 2016).
Hargett relies on this case law to argue that the late-night entry to the front porch, and accompanying knock on the front door, were unreasonable as a matter of law. We reject this argument because the facts of this particular case distinguish it from the cases on which Hargett relies.
First, this was not a "general inquiry" knock-and-talk. The trial court found that the officers were following a potential suspect who had recently entered the house. That suspect had been observed in the driver's seat of a car where the officers smelled "a strong odor of raw, fresh, unburnt marijuana." The passenger of that car told officers that the driver "went in there" while pointing at the house. As the officers approached the house, there were lights on. All of these facts, taken together, readily supported the officers' conclusion that, despite the late hour, there was someone awake inside the home (indeed, someone who had just entered the home) who would be available to speak to the officers.
Second, the officers were following not only a potential suspect, but also the "strong odor of burning marijuana coming from inside the residence." The officers smelled "fresh, unburnt marijuana" when they initially approached the nearby car, but from the street outside the house, they could smell burning marijuana coming from the house itself. This indicated to the officers that there were occupants of the home actively smoking marijuana.
In light of these facts, we hold that the officers' warrantless entry onto the front porch to knock on the front door, announce their presence, and ask to speak to the occupants, did not violate the Fourth Amendment despite the fact that it was late at night.
II. Officer's entry into side yard
Hargett next challenges Sergeant Fuller's warrantless entry into the side yard of the house, where the officer observed Hargett's incriminating activity through a window. Again, we find the officer's actions reasonable under our Fourth Amendment precedent.
A warrantless entry into the side yard of a person's home is permissible "if probable cause exists to search and the exigencies of the situation make search without a warrant necessary." State v. Stover , 200 N.C. App. 506, 511, 685 S.E.2d 127, 131 (2009). Probable cause exists where an officer smells illegal drugs coming from the property. Id. Exigent circumstances exist where facts indicate to the officer the likely "destruction or disappearance of a controlled substance." State v. Nowell , 144 N.C. App. 636, 643, 550 S.E.2d 807, 812 (2001), aff'd per curiam , 355 N.C. 273, 559 S.E.2d 787 (2002).
Here, there was a strong odor of burning marijuana coming from the house as officers approached. The officers were pursuing a potential suspect who, according to a witness, recently entered the house from a car that smelled of fresh, unburnt marijuana. The lights were on inside the house, but officers heard no noise or activity as they approached the front door. As soon as the officers knocked on the front door of the house and announced themselves as police, they heard significant activity inside the house, including the sound of large objects being moved and toilets being flushed.
These noises, coupled with the smell of burning marijuana coming from the house, gave the officers reason to believe that the occupants were actively concealing or destroying incriminating drug evidence. Under our precedent, these facts readily justified the officer's decision to walk into the side yard and look through an opening in the blinds to confirm whether the noises were, in fact, the sounds of evidence being concealed or destroyed. See id. ; State v. Frazier , 142 N.C. App. 361, 369, 542 S.E.2d 682, 688 (2001). Accordingly, the officer's warrantless entry into the side yard did not violate the Fourth Amendment.
Conclusion
The officers' warrantless approach to the front door and side yard of the home were reasonable under the circumstances and did not violate Hargett's Fourth Amendment rights. The trial court properly denied Hargett's motion to suppress, and we therefore find no error in the trial court's judgments.
NO ERROR.
Report per Rule 30(e).
Chief Judge McGEE and Judge TYSON concur.