No. 80–1163. TRAPPER ET AL. *v.* NORTH CAROLINA. Ct. App. N. C. Certiorari denied.

JUSTICE BRENNAN, dissenting.

*Stone* v. *Powell,* 428 U. S. 465 (1976), held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.,* at 494 (footnote omitted). The effect of this holding was to make this Court, on direct review, the only federal forum available to the accused to monitor state-court compliance with the Fourth Amendment. I dissented in that case and reminded my Brethren that "institutional constraints totally preclude any possibility that this Court can adequately oversee whether state courts have properly applied federal law." *Id.,* at 526. "[O]ur certiorari jurisdiction is inadequate for containing state criminal proceedings within constitutional bounds," because "federal review by certiorari in this Court is a matter of grace, and it is grace now seldom bestowed at the behest of a criminal defendant." *Id.,* at 534. While the lower federal courts by way of habeas corpus are better suited than are we on direct review to assure state-court compliance with Fourth Amendment requirements, we are now duty bound by *Stone* v. *Powell* to fulfill this monitoring function. The denial of certiorari in this case demonstrates, however, that the Court will not discharge that duty, because the petition presents a substantial issue whether the North Carolina courts properly applied the Fourth Amendment. I, therefore, dissent from the denial of certiorari and would set this case for argument.

I

Petitioners were arrested for various crimes connected with the possession, sale, and delivery of marihuana. Deputy

Sheriff Charlie Carawan, of Hyde County, N. C., first met petitioner Lombardo two years prior to his arrest when Lombardo purchased property about one-half mile from Carawan's home. App. to Pet. for Cert. 13. Lombardo's property is "located adjacent to a paved, rural road and adjacent to the main stream of Fortescue Creek" which is connected to the Intracoastal Waterway. *Id.,* at 13–14. Improvements were made on the property, including construction of rock driveways and a metal gate.

Several events caused Carawan to become suspicious of activities on the Lombardo property. First, "Carowan [*sic*] began to receive reports from some of his acquaintances in the neighborhood that they had begun to hear the sounds of heavy truck and boat engines on and near the Lombardo property," sounds which were "unusual in that area." *Id.,* at 14. In addition, on December 21, 1978, Carawan assisted a boat which was stuck in the mud bottom of Fortescue Creek about one mile from the Lombardo property. Based on his knowledge of the channels of the creek and of the prevailing winds that day, Carawan disbelieved the story of the boat's skipper that he had become disabled in the Pungo River and then drifted into the creek where he ran aground. *Id.,* at 14–16. Sometime thereafter, Carawan motored his small boat near the Lombardo property to observe activities thereon. While doing so, he heard two rifle shots which he believed came from the Lombardo property, one of which apparently passed near him. *Id.,* at 16.

These events led Carawan to suspect that the Lombardo property was being used for marihuana smuggling. *Id.,* at 16–17. Accordingly, Carawan arranged for two state troopers to be stationed east and west of the intersection of the rural paved road leading to the Lombardo property and U. S. Highway 264. *Id.,* at 17. On the night of January 13, 1979, Carawan secluded himself 50 yards from the Lombardo gate and observed the property until about midnight, when a truck which appeared to be heavily loaded left the Lom-

bardo property. *Id.*, at 17–18. Carawan followed the truck past his own home, where he left his personal car and took his patrol car. He also radioed the two state troopers who were stationed on U. S. Highway 264. After following the truck, which was being driven by petitioner Trapper, Carawan and the state troopers eventually stopped it. *Id.*, at 18. Upon reaching the truck, the two state troopers and Carawan smelled marihuana. *Id.*, at 19. Trapper was then arrested and one of the troopers left for Swan Quarter to obtain a warrant to search the truck. *Ibid.* The trooper returned at 1:40 a.m. on January 14, 1979, with a warrant. The search of the truck revealed approximately 4,000 pounds of marihuana. Carawan then obtained a warrant "to search the Lombardo double-wide house trailer for marijuana," and "the Lombardo house and curtilage, including a metal storage building was searched and . . . a large quantity of baled and loose marijuana was found and seized from the aforesaid metal building." *Id.*, at 19–20.

Prior to trial, petitioners moved to suppress the evidence seized during the two searches on Fourth Amendment grounds. Their motion to suppress was denied. Petitioners then pleaded guilty to various marihuana-related crimes and received suspended sentences. They subsequently appealed the trial court's ruling on the suppression motion to the North Carolina Court of Appeals, which affirmed the trial judge. 48 N. C. App. 481, 269 S. E. 2d 680 (1980). The court, taking judicial notice that "Hyde County is on the coast of North Carolina in an area which is regularly used by smugglers of marijuana," *id.*, at 486, 269 S. E. 2d, at 683, held that Carawan, as an experienced law enforcement officer, had "reasonable suspicion" that a crime was being committed and thus was authorized to conduct a *Terry* stop of the truck. *Terry* v. *Ohio*, 392 U. S. 1 (1968); see *Delaware* v. *Prouse*, 440 U. S. 648 (1979). The court further concluded that the stop was reasonable in extent and time, and that when the officers smelled marihuana from their outside inspection of

the truck, they had probable cause to arrest Trapper and to obtain a warrant to search the truck. The court also held that the marihuana discovered in the truck created probable cause to obtain a warrant to search the Lombardo premises.

The Supreme Court of North Carolina subsequently dismissed petitioners' appeal, finding that it did not present a substantial constitutional question. This petition followed.

## II

Petitioners challenge the ruling of the North Carolina Court of Appeals on two grounds: (1) that the stop of the truck was illegal as not based on reasonable suspicion, resting on objective articulable facts, that the driver was involved in criminal activity; and (2) that the search of the Lombardo property was unlawful since the warrant authorizing it was issued pursuant to an affidavit which itself was premised on illegally seized evidence. Petitioners' second argument depends entirely on the validity of the first.

The first argument has substantial merit. The reasons advanced by Carawan as justification for stopping the truck hardly amounted in the aggregate to objective articulable facts leading to reasonable suspicion that individuals associated with the Lombardo property were engaged in criminal activity. See *Brown* v. *Texas,* 443 U. S. 47, 51 (1979). Boat and truck noises and the presence of a locked metal gate across the Lombardo premises are fully consistent with lawful activity. Similarly, the grounding of the boat in Fortescue Creek occurred over one mile from the Lombardo premises. Even if Carawan totally disbelieved the skipper's story of how the boat came to be grounded, there is no basis for linking the boat to the Lombardo premises. Moreover, the fact that Hyde County, N. C., may be an area frequented by marihuana smugglers is of no significance in the absence of articulable facts linking the Lombardo premises to marihuana smuggling. See *Ybarra* v. *Illinois,* 444 U. S. 85 (1979);

*United States* v. *Mendenhall,* 446 U. S. 544, 572 (1980) (WHITE, J., dissenting).

The only arguably objective fact of criminal activity was the firing of two rifle shots, which may have occurred as long as 24 days before the arrest. However, if Carawan believed that the shots were directed at him, it is hard to understand why he took no immediate action. Nor is there any indication how Carawan believed those shots to be linked to criminal activity, particularly since Lombardo had previously told Carawan that he bought the land for hunting purposes. The record before us is simply too ambiguous on the purpose, origin, and date of the shots to assess the incident properly in terms of whether Carawan had a reasonable suspicion that individuals on the Lombardo premises were engaged in criminal activity on January 13, 1979. This is precisely the type of ambiguity that a hearing before a federal habeas court is ideally designed to resolve. But since *Stone* v. *Powell* effectively eliminated federal habeas corpus review of Fourth Amendment claims, this Court has no choice but to decide petitioners' nonfrivolous constitutional claims presented in this case on the record as it comes to us from the state courts.

If a federal habeas forum were available to petitioners, I would not hesitate to vote to deny certiorari and leave to a habeas court the burden of resolving any ambiguity in the key facts. Moreover, the lower federal courts might well determine that the state courts committed constitutional error, thereby obviating the need for review in this Court. However, since *Stone* v. *Powell* saddles this Court with the duty of providing the only federal forum for decision of Fourth Amendment claims, we are obligated to decide cases on direct review which we might otherwise deny. This is such a case because there is a substantial question whether Carawan had reasonable suspicion to stop Trapper's truck.

JUSTICE STEWART also dissents from the denial of certiorari.