STATE OF NORTH CAROLINA v. DAVID DOUGLAS COURTRIGHT

No. 8226SC555

(Filed 4 January 1983)

1. Searches and Seizures § 39— search under warrant for dwelling—search of outbuildings or vehicles within curtilage

The premises of a dwelling house include, for search and seizure purposes, the area within the curtilage, and a search pursuant to a warrant describing a dwelling does not exceed its lawful scope when outbuildings or vehicles located within the curtilage are also searched.

2. Searches and Seizures § 39— search warrant for dwelling house—search of automobile partially in yard

Where defendant's automobile was parked so that it projected six or seven inches into the yard of a dwelling described in a search warrant, and the keys thereto were found by officers inside the dwelling and thus wholly on the premises, the automobile was within the curtilage of the described dwelling and could properly be searched pursuant to the warrant.

3. Narcotics § 4.3— constructive possession of narcotics in automobile—sufficiency of evidence

The State's evidence was sufficient to permit the jury to find that defendant had constructive possession of cocaine and marijuana found in an

automobile where it tended to show that the automobile was parked within the curtilage of defendant's home; the home and premises were under defendant's control; a certificate of title and a registration card in defendant's name were found in the glove compartment; and the keys to the vehicle were found by the officers on the kitchen counter inside defendant's home.

**4. Criminal Law § 113.1— misstatement of evidence—harmless error**

Although the evidence did not support the trial court's charge that defendant offered evidence tending to show that defendant did drive an automobile in which narcotics were found during the two months preceding the crimes charged, such misstatement was not material so as to constitute reversible error where there was ample other evidence from which to infer defendant's constructive possession of the narcotics found in the automobile. G.S. 15A-1443(a).

APPEAL by defendant from *Johnson, Judge.* Judgment entered 5 October 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 18 November 1982.

Defendant appeals from a judgment of imprisonment entered upon his conviction of trafficking in cocaine.[1]

*Attorney General Edmisten, by Assistant Attorney General Richard H. Carlton, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Ann B. Petersen, for defendant appellant.*

WHICHARD, Judge.

Defendant first challenges the validity of the search of an automobile, from which the narcotics were seized which led to his conviction. Police officers had applied for a warrant to search a "one story single family dwelling . . . located at 5035 Furman Pl., Charlotte, . . . [a] 1979 Ford color tan/blue, [NC] 80 Tag LHJ960," and any occupants of the premises. The items sought were cocaine and quaaludes.

Pursuant to the warrant, officers searched the designated residence and the 1979 Ford, which was parked in the driveway;

---

1. The statement at the beginning of the record indicates that defendant was also convicted of possession of marijuana, and that he also appealed that conviction. The record, however, does not contain a judgment entered on that conviction. Because we find no error in the contentions presented in defendant's brief, the effect of our decision in any event would be to uphold that conviction as well as the conviction for trafficking in cocaine.

but they found no contraband. They then proceeded to search a 1973 Thunderbird which was not mentioned in either the warrant or the supporting affidavit. The Thunderbird was parked on the street in front of the residence with the wheels on the driver's side of the vehicle projecting off the pavement six or seven inches into the yard. The officers had observed the Thunderbird at defendant's home prior to obtaining the search warrant, and they knew it was registered in defendant's name. Cocaine and marijuana were found in the Thunderbird's trunk; and the Thunderbird title, registered in defendant's name, was found in the glove compartment.

Defendant moved to suppress the seized contraband on grounds that search of the Thunderbird was not within the scope of the warrant, and that the search did not fall within any recognized exception to the fourth amendment prohibition against warrantless searches. The court denied the motion on the ground that the Thunderbird was within the curtilage of the premises described in the warrant.

[1]   As a general rule, "if a search warrant validly describes the premises to be searched, a car on the premises may be searched even though the warrant contains no description of the car." *State v. Reid,* 286 N.C. 323, 326, 210 S.E. 2d 422, 424 (1974) (quoting 68 Am. Jur. 2d, Searches and Seizures, § 80, p. 735); *see State v. Logan,* 27 N.C. App. 150, 151, 218 S.E. 2d 213, 214-15 (1975). The premises of a dwelling house include, for search and seizure purposes, the area within the curtilage, and a search pursuant to a warrant describing a dwelling does not exceed its lawful scope when outbuildings or vehicles located within the curtilage are also searched. *See, e.g., State v. Mills,* 246 N.C. 237, 242, 98 S.E. 2d 329, 333 (1957); *State v. Travatello,* 24 N.C. App. 511, 513, 211 S.E. 2d 467, 469 (1975); *State v. Logan, supra.*

The common law concept of curtilage historically includes the "yard, courtyard or other piece of ground included within the fence surrounding a dwelling house." *Fixel v. Wainwright,* 492 F. 2d 480, 483 (5th Cir. 1974). "For search and seizure purposes [the curtilage] includes those outbuildings which are directly and intimately connected with the habitation and in proximity thereto and the land or grounds surrounding the dwelling which are

necessary and convenient and habitually used for family purposes and carrying on domestic employment." *Black's Law Dictionary* 346 (5th ed. 1979). "Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family." *United States v. Stanley*, 597 F. 2d 866, 870 (4th Cir. 1979) (quoting *Care v. United States*, 231 F. 2d 22, 25 (10th Cir.), *cert. denied*, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956)).

Places and things held within the curtilage of premises described in a warrant have included a car parked on the lot surrounding a service station, *State v. Reid, supra*, 286 N.C. at 324-26, 210 S.E. 2d at 423-24; and a shed connected to a house-trailer by a thirty-foot concrete walk, *State v. Trapper*, 48 N.C. App. 481, 487, 269 S.E. 2d 680, 684 (1980), *appeal dismissed*, 301 N.C. 405, 273 S.E. 2d 450 (1980), *cert. denied*, 451 U.S. 997, 101 S.Ct. 2338, 68 L.Ed. 2d 856 (1981). A trash receptacle on the premises of an apartment building, however, was held not to be within the curtilage of a defendant's apartment, *United States v. Minker*, 312 F. 2d 632, 634 (3d Cir. 1962), *cert. denied*, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed. 2d 978 (1963); and a defendant's automobile, parked in a lot used by three other tenants of a mobile home park and in a space neither annexed to his mobile home nor assigned for his exclusive use, was held not to be within the curtilage of his mobile home, *United States v. Stanley, supra*, 597 F. 2d at 870.

Although the general public may make occasional use of that portion of defendant's front lawn furtherest from the dwelling, a homeowner's lawn is typically "use[d] and enjoy[ed] as an adjunct to the domestic economy of the family." *Stanley, supra*. It is an area within which the owner or possessor assumes the responsibilities and pleasures of ownership or possession. It is thus reasonable to conclude that the curtilage of the dwelling house described in the warrant extends to the line between the front lawn of defendant's home and the pavement of the public street in front of it.

[2] Defendant's Thunderbird was parked so that it projected six or seven inches into the yard; and the keys thereto, which were

essential to control of the vehicle, were found by the officers inside the dwelling and thus wholly on the premises. These facts combine to justify the conclusion that the Thunderbird was within the curtilage of the described dwelling, thereby validating its search pursuant to the warrant.

[3]  Defendant next assigns error to the denial of his motions to dismiss on the ground that the evidence is insufficient to support a jury finding that he possessed the narcotics seized from the trunk of the Thunderbird.

> An accused's possession of narcotics may be actual or constructive. He has possession of the contraband material within the meaning of the law when he has both the power and intent to control its disposition or use. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. Also, the State may overcome a motion to dismiss . . . by presenting evidence which places the accused "within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession."

*State v. Harvey*, 281 N.C. 1, 12-13, 187 S.E. 2d 706, 714 (1972).

We have held that the Thunderbird was parked within the curtilage, and thus on the premises, of defendant's home; and it is undisputed that the home and premises were under defendant's control. The fact that the narcotics were in an automobile, parked on the premises, "in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury." *Harvey, supra.*

Additional evidence on the issue of possession was as follows:

A police officer testified that he had seen the Thunderbird at defendant's home two or three times previously; that a certificate of title and a registration card in defendant's name were found in the glove compartment; and that the keys to the vehicle were found by the officers on the kitchen counter inside defendant's home. The officer acknowledged that he had never seen defendant operate the Thunderbird; and that every time he met defendant

away from defendant's home to purchase drugs, defendant was driving the 1979 Ford described in the search warrant.

Defendant's daughter, who did not live at her parents' home, testified that she saw defendant drive the Thunderbird and the 1979 Ford each about three or four times; that she had not seen him drive the Thunderbird during the period of "October through November of 1980" (the search and seizure occurred on 14 November 1980); and that she, her brother, and her younger sister all occasionally drove the Thunderbird.

Considering this evidence in the light most favorable to the State, and granting the State the benefit of every reasonable inference, *see, e.g., State v. Finney*, 290 N.C. 755, 757, 228 S.E. 2d 433, 434 (1976), the foregoing circumstances were sufficient to allow the jury to draw a reasonable inference that defendant "constructive[ly] possess[ed] [the] contraband material . . . with an intent and capability to maintain control and dominion over it," *State v. Spencer*, 281 N.C. 121, 129, 187 S.E. 2d 779, 784 (1972). Defendant's motion to dismiss thus was properly denied.

[4] Defendant finally contends the court erred when it charged that "defendant has offered evidence which tends to show that from October through November of 1980 . . . the defendant did drive [the Thunderbird]." The only evidence on this point was the testimony of defendant's daughter, who stated that she did *not* see defendant drive the Thunderbird during this period.

Defendant's trial commenced before 1 October 1981, the effective date of Rule 10(b)(2), Rules of Appellate Procedure. His failure to object before the jury retired thus is not fatal, and the following rule is applicable:

> Although the court ordinarily should be informed of an inaccuracy in the summary of the evidence in the charge during or at the conclusion of the instructions so that any error may be corrected, a statement of a material fact not in evidence will constitute reversible error whether or not it is called to the court's attention. [Citations omitted.]

*State v. Barbour*, 295 N.C. 66, 75, 243 S.E. 2d 380, 385 (1978).

Although the misstatement is relevant to the crucial issue of possession, it was not material so as to constitute reversible er-

ror, because there was ample other evidence, previously discussed, from which to infer possession. There is no reasonable possibility that a different result would have been reached had the evidence been correctly recited, and defendant thus has not sustained his burden of showing prejudice. G.S. 15A-1443(a).

No error.

Judges VAUGHN and WELLS concur.