An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-73
NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

STATE OF NORTH CAROLINA

v.                                    Mecklenburg County
                                      Nos. 12 CRS 200980-84
ROLAND ASHLEY HUGHES


Appeal by defendant from judgments entered 26 August 2013 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 May 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Robert D. Croom, for the State.*

> *Arnold & Smith, PLLC, by Laura M. Cobb, for defendant-appellant.*


McCULLOUGH, Judge.


Roland Ashley Hughes (Defendant) appeals the order of the trial court denying his motion to suppress evidence as well as certain evidentiary rulings made during the trial of his case. For the reasons set forth herein, we affirm the order of the trial court regarding the motion to suppress and find no error in the trial of Defendant's case.

I. <u>Procedural History</u>

Defendant was indicted by a Mecklenburg County grand jury on 16 July 2012 and charged with trafficking in marijuana, manufacture of a controlled substance, maintaining a place to keep controlled substances, possession with intent to sell or deliver marijuana, and possession of drug paraphernalia. On 6 February 2013, Defendant filed, pursuant to N.C. Gen. Stat. § 15A-972 and the federal and state constitutions, a motion to suppress all evidence seized from 1963 Margate Avenue, Charlotte, North Carolina, along with any statements made by Defendant. On that same date, Defendant filed an objection to the admission of a laboratory report pursuant to N.C. Gen. Stat. § 90-95(g). On 19 and 20 August 2013, Defendant filed Motions In Limine to suppress any evidence regarding settlement negotiations and agreements regarding the lease of 1963 Margate Avenue and to suppress untested plant material.

A suppression hearing was held on 19 August 2013, after which the trial court denied Defendant's motions to suppress. A jury trial began shortly thereafter which ended on 26 August 2013 with Defendant's conviction on all charges. Defendant gave oral notice of appeal in open court that same day. Defendant's case is before this Court as a final judgment of the Superior

Court and, pursuant to N.C. Gen. Stat. § 7A-27(b), is properly before this Court.

## II.  Factual Background

The single family residential structure located at 1963 Margate Avenue in Charlotte, North Carolina, first came to the attention of the Charlotte-Mecklenburg Police Department in December 2011 when Officer Aksone Inthisone responded to several domestic violence incidents in the vicinity of 1963 Margate Avenue.  During the first call, he smelled a strong odor of marijuana but could not locate the source.  During the second domestic violence incident, Officer Inthisone was able to identify the building at 1963 Margate Avenue as the place from which the marijuana odor emanated.  Officer Inthisone reported his observations to an officer with the Focus Mission Team, Officer Peter Carbonaro.

Shortly after receiving the information from Officer Inthisone, Officer Carbonaro, along with other officers, went to 1963 Margate Avenue to conduct a "Knock and Talk" investigation. Upon exiting his vehicle, Officer Carbonaro smelled a strong odor of marijuana and, as he approached the front door, the smell became more intense to the point that he was certain the residential building located there was the source of the marijuana odor.  Officer Carbonaro knocked on the door and while

waiting to see if anyone would answer the door, heard a loud "motor generator" sound coming from the rear of the residence. He walked to the rear of the residence and identified the source of this sound as an operational air conditioner unit. He also observed that the lights were on and all windows were covered with black cloth. As it was 35 degrees on 4 January 2012, Officer Carbonaro believed it was odd to be running an air conditioner. Based on the smell of marijuana and the sound of the equipment, as well as the fact that the lights were on while the windows were covered, Officer Carbonaro believed that 1963 Margate Avenue was a building that housed a marijuana growing operation. Accordingly, he proceeded to the Magistrate's courtroom where he applied for a search warrant.

In researching the ownership of 1963 Margate Avenue, Officer Carbonaro found that the building was owned by one Frank Shepherdson and he located a utility bill in Defendant's name. Defendant's name somehow became transposed as "Ronald Hughes" and the fact that Ronald Hughes had a prior record of drug violations was also included in the warrant application. Based on all of the above, the Magistrate issued a search warrant, which was then executed about 12:30 a.m. on 5 January 2012.

During the execution of the warrant, the officers opened all the windows to ventilate the building as the smell was so

overpoweringly strong. Upon discovering that the electrical box had been altered to the point the officers were concerned for their safety, the Fire Department was called. Members of the Fire Department inspected the premises for safety and provided the searching officers with masks. The officers found a number of growing marijuana plants, 51 half-pound bags of marijuana, and a digital scale. The weight of all the material seized was 89.7 pounds and the weight of the plants forensically tested was 13.124 pounds. Also located in the building were a concealed weapon permit, a firearms course completion certificate, a U.S. Marine Corps discharge form and a utility bill, all in Defendant's name. At trial, the property manager for the unit located at 1963 Margate Avenue identified Defendant as the person who paid the rent on the building, producing copies of checks signed by Defendant which represented rental payments. Evidence consisting of emails and other documents regarding Defendant's settlement of civil claims by the owner against Defendant for property damage were also admitted. All of the documentary evidence was received over objection.

### III. Issuance of Search Warrant

Defendant moved to suppress all evidence seized from 1963 Margate Avenue arguing that the warrant was lacking in probable cause. The crucial paragraph of the Application For Search

Warrant, wherein the officer must offer evidence sufficient for

a Magistrate to find probable cause, reads as follows:

This applicant has received a drug complaiant [sic] in the past month from Officer Inthisone #1948 and concerned citizens. Officer Inthisone has been employed with the Charlotte-Mecklenburg Police Department since 1997. During Officer Inthisone's 14 years with the department he has attended Basic Law Enforcement Training and Explosive Ordinance Disposal School. Officer Inthisone advised me that in the past month he has answered several calls for service on Margate Avenue and smelled a strong odor of marijuana. Officer Inthisone also advised that the address that he smelled the marijuana was emitting from 1963 Margate Avenue. Officer Inthisone also advised that concerned citizens that live on the block near 1963 Margate Ave[nue] have also complained of the marijuana smell. The concern[ed] citizen[s] also stated to Officer Inthisone that a loud sounding generator comes on at night located at the residence.

On January 4, 2012, at approximate 2130 hours, Officers from the Eastway Division Focus Mission Team attempted to conduct a Knock and Talk investigation at 1963 Margate Avenue. While I was approaching the residence I could smell an odor of marijuana emitting from the residence. While I was waiting for somebody to come to the front door, I heard a motor/generator sound coming from the back of the house. I walked around to the backyard to see what the sound was. It appeared that the sound was coming from an air conditioner unit that was in the wall of the back part of the house. This room had all of the lights on and all of the windows were covered with a black cloth material. The temperature tonight is 35

degrees Fahrenheit. Through my training and experience I believe that this house is manufacturing marijuana and conducting a grow operation inside.

Defendant correctly states our standard of review; thus, we quote Defendant's brief with approval:

### A. Standard of Review of denial of Motion to Suppress

Review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134 (1982). "The trial court's conclusions of law ... are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208 (2000).

### B. Standard of Review of warrant probable cause finding

"[T]he duty of the reviewing court [in reviewing a probable cause determination]... is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.'" *State v. Taylor*, 191 N.C. App. 587, 591 (2008). (*See Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

Citing *State v. Wallace,* 111 N.C. App. 581, 585, 433 S.E.2d 238, 241 (1993), Defendant recognizes that officers may approach the front door of a residence and knock on the door to see if the occupant will answer questions. Defendant argues that the

officer had no right to approach the rear of the residence and that the use of the name Ronald Hughes was an attempt to buttress a weak application. We need not consider either argument if the one sentence set forth above, where Officer Carbonaro alleges he smelled marijuana emanating from 1963 Margate Avenue as he approached the front door, is sufficient for a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 157, 57 L. Ed. 2d 667, 673 (1978); *State v. Louchheim*, 296 N.C. 314, 322-23, 250 S.E.2d 630, 636 (1979).

Defendant argues that smell alone cannot provide probable cause citing only one case, that of *Johnson v. U.S.*, 333 U.S. 10, 92 L. Ed. 436 (1948). The trial court disagreed and in its order explicitly stated that the finding of probable cause was supported by the odors detected by both Officer Inthisone and Carbonaro, particularly the latter, without regard to any information gleaned from walking to the rear of the residence. In its brief, the State cites a number of cases for the proposition that probable cause to search is established once officers identify the plain smell of the illicit substance. In its reply brief, Defendant attempts to distinguish each case cited. We need not review every case cited by either party as it has long been held by the courts that smell of a substance can generate probable cause. In *State v. Downing*, 169 N.C. App.

790, 796, 613 S.E.2d, 35, 39 (2005), this Court clearly stated, "[p]lain smell of drugs by an officer is evidence to conclude there is probable cause for a search."

The *Downing* case involved a traffic stop where an informant told police about a shipment of cocaine. Based on the informant's information, the car was stopped and a strong odor of cocaine was noted by the officers. This Court stated:

> Plain smell of drugs by an officer is evidence to conclude there is probable cause for a search. *State v. Trapper*, 48 N.C. App. 481, 484-85, 269 S.E.2d 680, 682, *appeal dismissed*, 301 N.C. 405, 273 S.E.2d 450 (1980), *cert. denied*, 451 U.S. 997, 68 L. Ed. 2d 856 (1981) (affidavit containing a statement that a strong odor of marijuana was noticed was evidence from which a magistrate could conclude there was probable cause to issue a search warrant).

*Id.* at 796, 613 S.E.2d at 39.

In short, despite Defendant's assertion that odor alone is insufficient to establish probable cause to search, such is not the law, nor has it been. Just as the Court in *Downing* and *Trapper* held that odor establishes the right to search, we too hold that Officer Carbonaro's affidavit provided probable cause to search 1963 Margate Avenue.

## IV. Documentary Evidence

During the execution of the search warrant, the officers discovered several documents which had Defendant's name on them.

These documents included a U.S. Marine Corps discharge, a concealed weapon permit, a certificate attesting to Defendant's graduation from a firearms training course, and a utility bill. Defendant objected to the documents on the basis that they were hearsay. We review the trial court's admission of these documents *de novo*. *State v. Johnson*, 202 N.C. App. 682, 706 S.E.2d 790 (2011).

As Defendant was not present at the time of the search and in actual possession of the marijuana in question, the State bore the burden of establishing constructive possession. *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009). Defendant argues that the documents were hearsay and not properly authenticated as they were offered into evidence after being identified by the seizing officers. Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2013). In the case *sub judice*, it does not appear that the State was offering the documents to prove that Defendant was in fact discharged from the U.S. Marine Corps, that he attended a firearms class, that he was licensed to carry a concealed weapon, or that he had an account with the power company. Instead, they were placed in evidence merely because

they were documents bearing Defendant's name and were found on the premises. As such, the documents were some evidence that the Defendant was in control of the premises. These documents were not being offered for the truth of the matter asserted and thus were not hearsay. Their admission into evidence was not error.

Defendant also objected to copies of the checks he issued to the property management company when he paid rent for the residence located at 1963 Margate Avenue. He further objected to copies of the emails, lease, and settlement he reached with the owner regarding property damage at that location. The checks were properly authenticated by the bookkeeper who processed them after accepting them personally from Defendant. The bookkeeper's testimony did not rely on out of court statements but were based on her personal knowledge. Her testimony authenticated the checks, and thus, they were admissible upon her identification and were relevant to prove Defendant's constructive possession of the premises. *See State v. James*, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986) (proof of constructive possession depends on the totality of circumstances and no one factor controls).

At trial and on appeal, Defendant argues that emails between Defendant and the property owner regarding a settlement

they reached over property damage was improperly admitted in violation of Rule 408, which provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or evidence of statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

N.C. Gen. Stat § 8C-1, Rule 408 (2013).

Here, the State offered the evidence not to establish Defendant's liability for the damage but to show his constructive possession of the premises. This evidence was not offered in a trial between the property owner and Defendant over the issue of liability for damage to the premises; rather, the evidence was tendered in a criminal trial to establish Defendant's constructive possession. The evidence was thus admissible and its admission does not violate Rule 408. *See*

*Renner v. Hawk*, 125 N.C. App. 483, 492, 487 S.E.2d 370, 375, *disc. rev. denied*, 346 N.C. 283, 487 S.E.2d 553 (1997).

Defendant also argues that some of these documents were not provided until trial and Defendant was prejudicially surprised when they were produced at trial. Defendant claims the documents should have been excluded as violations of the discovery statutes. The complained of documents were all listed on the property inventory records which were provided to Defendant long before trial. Thus, the State complied with N.C. Gen. Stat. § 15A-903(b) (2013) and this argument is without merit.

## V.    Marijuana Evidence

Defendant objected to the untested marijuana admitted into evidence and displayed to the jury and argued its probative value is outweighed by its prejudicial effect. We review the court's admission of evidence for abuse of discretion. *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008) (abuse of discretion occurs when the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not be the result of reasoned decision). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2013). Rule 403 allows the exclusion of relevant evidence if the court finds its probative value is substantially outweighed by unfair prejudice, confusion of the issues, could mislead the jury, delay, or be a waste of time. N.C. Gen. Stat. § 8C-1, Rule 403 (2013).

The State had the burden of proving Defendant was conducting a marijuana growing operation. As such, the entire scope of the operation was relevant to the issue of Defendant's guilt or innocence. Thus, the court properly allowed all of the plant evidence to be introduced and viewed by the jury. While most evidence which is probative of Defendant's guilt is prejudicial, that does not make such evidence inadmissible. *See State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) (while evidence that is probative necessarily has prejudicial effect, the question is one of degree). Since Defendant's trafficking charge was supported by the evidence which was forensically tested, we see no prejudice to Defendant in the admission of the entire plant evidence.

Relying on an unpublished Illinois decision, *State v. Miller*, 2012 Ill. App. 3d 1, 8 (2011), Defendant argues that it was error for the trial court to have allowed the bulk marijuana exhibit to be present in the courtroom and instead should have restricted the State's presentation. Defendant maintains that

photographs should have been offered rather than the actual marijuana plants themselves. We do not agree that the admission of this evidence constitutes reversible error. Control of the courtroom and ensuring that the trial is conducted efficiently is within the sound discretion of the trial judge and his decision will not be overturned absent an abuse of discretion. *State v. Arnold*, 284 N.C. 41, 46-47, 199 S.E.2d 423, 427 (1973). As the marijuana exhibits were not in the courtroom for more than four hours during a one week trial, it does not seem that the exhibits were in the courtroom for an extended period of time. Other jurisdictions that have confronted this issue have found no abuse of discretion under similar circumstances. *See U.S. v. Ramos Rodriguez*, 926 F.2d 418, 421 (5th Cir. 1991); *U.S. v. Dunn*, 961 F. Supp. 249, 251-52 (D. Kan. 1997); *McKenzie v. State*, 362 Ark. 257, 270, 208 S.W.3d 173, 180 (2005).

No error.

Judges STEPHENS and STROUD concur.

Report per Rule 30(e).