INMAN, Judge.
*335 This appeal concerns the validity of a search warrant for a home and the scope of that warrant, as related to a vehicle in the driveway not owned or controlled by the resident of the home.
David Matthew Lowe ("defendant") appeals from judgments entered after he pled guilty to one count each of trafficking in *336 methylenedioxymethamphetamine ("MDMA") by possession, trafficking in MDMA by transportation, and possession with intent to sell and deliver lysergic acid diethylamide ("LSD"). On appeal, defendant argues that the trial court erred by denying his motions to suppress because: (1) the search warrant issued for the residence where the vehicle containing defendant's belongings was parked lacked probable cause; and (2) even if the search warrant were validly issued, the search of the vehicle exceeded the scope of the warrant.
Although we conclude that the warrant was supported by probable cause, we agree with defendant that the search of the vehicle exceeded the scope of that warrant. Therefore, we reverse the trial court's denial of defendant's motion to suppress, vacate the underlying judgments, and remand for further proceedings.
Background
On 24 September 2013, Detective K.J. Barber ("Det. Barber") of the Raleigh Police Department filed an affidavit in support of a search warrant with the local magistrate. In the affidavit, Det. Barber swore to the following facts:
In September of 2013, I received information that a subject that goes by the name "Mike T" was selling, using and storing narcotics at 529 Ashbrooke [sic] Dr. Through investigative means, I was able to identify Terrence Michael Turner as a possible suspect.
Terrence Michael [T]urner, AKA: Michael Cooper Turner has been charged with PWISD Methylenedioxymethamphetamine, Possess Dimethyltryptamine, PWISD Psylocybin, PWISD Cocaine, Possess Heroin, PWIMSD Schedule I, Maintain a Vehicle/Dwelling, Trafficking in *896 MDMA, Conspire to sell Schedule I and other drug violations dating back to 2001.
On 9/24/2013 I conducted a refuse investigation at 529 Ashebrook Dr. St [sic] Raleigh, NC 27609. The 96 gallon City of Raleigh refuse container was at the curb line in front of 529 Ashebrook Dr.
Detective Ladd removed one bag of refuse from the 96 gallon container and we took it to a secured location for further inspection. Inside the bag of refuse, I located correspondence to Michael Turner of 529 Ashebrook Dr. Raleigh, NC 27600, also in this bag of refuse, I located *337 a small amount of marijuana residue in a fast food bag, which tested positive as marijuana utilizing a Sirche # 8 field test kit.
Based on these facts and his experience and training as a narcotics officer, Det. Barber averred to his belief that illegal narcotics, including marijuana, were being stored in and/or sold from Turner's residence. Det. Barber's affidavit described the residence to be searched as 529 Ashebrook Drive, but did not specify any vehicles to search. The magistrate issued a warrant to search 529 Ashebrook Drive.
On 25 September 2013, Det. Barber and other officers executed a search of the residence. Inside the home the officers encountered Turner and two overnight guests-defendant and defendant's girlfriend, Margaret Doctors ("Ms. Doctors"). Parked in the driveway of Turner's home was a Volkswagen rental car, which the officers learned was being leased by Ms. Doctors and operated by both defendant and Ms. Doctors. The officers were aware at that time that Turner had no connection to the vehicle, other than it being parked in his driveway. A search of the Volkswagen revealed a book bag containing documents with defendant's name and controlled substances.[1]
Defendant was indicted on 2 December 2013. Prior to trial, he moved to suppress all evidence against him on two grounds: (1) the warrant authorizing the search of Turner's residence was not supported by probable cause, and (2) even if the search warrant were validly issued, the search of the Volkswagen exceeded the scope of the warrant. The trial court conducted an evidentiary hearing on these motions on 7 and 8 July 2014. At the hearing, Det. Barber testified that he surveilled Turner's residence multiple times before applying for the search warrant, but never saw the Volkswagen until the day of the search. He also testified that he had never seen defendant at Turner's residence prior to the day of the search. Det. Barber said that it was normal protocol for police to search vehicles located on the premises of a residence for which they had a search warrant.
The trial court denied defendant's motions to suppress. It first concluded that the tip given to Det. Barber, corroborated by the presence of marijuana residue found in Turner's trash, was sufficient to establish probable cause to search his residence for the presence of narcotics. Second, the trial court concluded that the search of the Volkswagen did *338 not exceed the scope of the warrant because the vehicle was parked within the curtilage of the home, which was specifically identified by address and physical description in the warrant.
After the trial court denied his motions to suppress, defendant pled guilty to all charges. He was sentenced to 35 to 51 months imprisonment for each count of trafficking in MDMA, which were to run concurrently, as well as 7 to 18 months imprisonment on the charge of possession with intent to sell and deliver LSD, set to run consecutive to the previous sentence. Defendant filed timely notice of appeal from these judgments.
I. Probable Cause
Defendant first argues that the warrant authorizing the search of Turner's residence was not supported by probable cause, and therefore any evidence gained from that search should have been suppressed.[2] We disagree.
*897 "Our scope of review of an order denying a motion to suppress evidence is 'whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Johnson, 98 N.C.App. 290, 294, 390 S.E.2d 707, 709-10 (1990) (quoting State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) ). We review the trial court's conclusions of law de novo. State v. Edwards, 185 N.C.App. 701, 702, 649 S.E.2d 646, 648 (2007).
Although we review the trial court's conclusions of law de novo, we must be cognizant of the notion that "great deference should be paid a magistrate's determination of probable cause and that after-the-fact scrutiny should not take the form of a de novo review." State v. Arrington, 311 N.C. 633, 638, 319 S.E.2d 254, 258 (1984) (emphasis added). In addressing whether a search warrant is supported by probable cause, we apply a "totality of the circumstances" test, State v. Beam, 325 N.C. 217, 220-21, 381 S.E.2d 327, 329 (1989), by which an affidavit is sufficient if it establishes "reasonable cause to believe that the proposed search ... probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." Arrington, 311 N.C. at 636, 319 S.E.2d at 256. "Probable cause does not mean actual and positive cause nor import absolute certainty," id., and as such, "the duty of a reviewing *339 court is simply to ensure that the magistrate had a 'substantial basis' to conclude that probable cause existed," State v. Sinapi, 359 N.C. 394, 398, 610 S.E.2d 362, 365 (2005) (quoting Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983) ).
A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than commonsense, manner. [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.
State v. Riggs, 328 N.C. 213, 222, 400 S.E.2d 429, 434-35 (1991) (alterations in original) (citations and quotation marks omitted). However, the magistrate may not act merely as a "rubber stamp for the police." State v. Bullard , 267 N.C. 599, 601, 148 S.E.2d 565, 567 (1966).
Defendant cites State v. Benters, 367 N.C. 660, 766 S.E.2d 593 (2014), in support of his argument that the search warrant here was issued without probable cause. In Benters, our Supreme Court held that where an unidentified informant's tip that the defendant was growing marijuana "amounts to little more than a conclusory rumor," the State is not "entitled to any great reliance on it," and instead, "the officers' corroborative investigation must carry more of the State's burden to demonstrate probable cause." Id. at 669, 766 S.E.2d at 600. The State in Benters argued that officers presented corroborative evidence including: (1) utility records indicating power consumption consistent with a marijuana growing operation in a residence owned by the defendant; (2) the existence in plain view of gardening equipment such as potting soil, fertilizer, seed trays, and pump type sprayers in the absence of any gardens or potted plants on the outside of the home; and (3) the officers' expertise and knowledge of the defendant. Id. at 669, 766 S.E.2d at 601. After examining these contentions under a "totality of the circumstances" test, the Court held that:
[T]he officers' verification of mundane information, ... statements regarding [the] defendant's utility records, and the officers' observations of [the] defendant's gardening supplies are not sufficiently corroborative of the anonymous tip or otherwise sufficient to establish probable cause, notwithstanding the officers' professional training and experience. Furthermore, the material allegations *340 set forth in the affidavit are uniformly conclusory and fail to provide a substantial basis from which the magistrate could determine that probable cause existed.
Id. at 673, 766 S.E.2d at 603. Specifically with regard to the gardening equipment, the *898 Court noted that "[n]othing here indicates a fair probability that contraband or evidence of a crime will be found in a particular place beyond [the officer's] wholly conclusory allegations." Id. at 672, 766 S.E.2d at 602 (quotation marks omitted).
The facts before us differ significantly from those in Benters. Here, Det. Barber conducted a refuse search of defendant's trash, the legality of which is not contested. In one of the bags, Det. Barber found correspondence to Turner at the address in question and a small amount of marijuana residue in a fast food bag.
Defendant concedes in his brief on appeal that "residue of marijuana might be indicative of drug use," but he argues that this evidence did not sufficiently corroborate the anonymous tip that Turner was selling drugs. This distinction is irrelevant. It is well-established in North Carolina that "a residue quantity of a controlled substance, despite its not being weighed, is sufficient to convict a defendant of possession of the controlled substance [.]" State v. Williams, 149 N.C.App. 795, 798-99, 561 S.E.2d 925, 927 (2002) ; see also State v. Thomas, 20 N.C.App. 255, 257, 201 S.E.2d 201, 202 (1973). Possession of controlled substances in violation of N.C. Gen.Stat. § 90-95 (2013) was identified by Det. Barber in the affidavit supporting the warrant as the specific crime for which he sought further evidence in the search of Turner's home. The affidavit also makes clear that Det. Barber received information that Turner was "selling, using and storing narcotics" at his residence.
Therefore, unlike in Benters, the magistrate here was presented with direct evidence of the crime for which the officers sought to collect evidence. Although there were many reasons the gardening equipment may have been outside the defendant's house in Benters, the presence of marijuana residue in defendant's trash offers far fewer innocent explanations. As our Supreme Court noted in Sinapi, when faced with evidence collected from a refuse search, a magistrate may "rely on his personal experience and knowledge related to residential refuse collection to make a practical, threshold determination of probable cause," and he is "entitled to infer that the garbage bag in question came from [the] defendant's residence and that items found inside that bag were probably also associated with that residence." Sinapi, 359 N.C. at 399, 610 S.E.2d at 365 (holding that a search warrant was supported by probable *341 cause where the defendant had been arrested twice for drug-related offenses and eight marijuana plants were recovered from a garbage bag outside the defendant's home). Although the amount of marijuana in this case differs substantially from that in Sinapi, the reasoning establishing probable cause is the same. While the classification of crimes as misdemeanors or felonies may differ based on the quantity of contraband, the threshold determination of whether behavior is criminal or not is binary; possession of eight marijuana plants is equally as unlawful as possession of marijuana residue. See Williams, 149 N.C.App. at 798-99, 561 S.E.2d at 927. Defendant offers no legal support for the argument that search warrants must be supported by probable cause of a certain type or severity of crime as opposed to criminal behavior in general.
Similarly to our Supreme Court in Sinapi, many courts in other jurisdictions have recognized that "the recovery of drugs or drug paraphernalia from the garbage contributes significantly to establishing probable cause." U.S. v. Briscoe, 317 F.3d 906, 908 (8th Cir.2003) (holding that marijuana seeds and stems found in the defendant's garbage were sufficient standing alone to establish probable cause because "simple possession of marijuana seeds is itself a crime under both federal and state law"); see also U.S. v. Colonna, 360 F.3d 1169, 1175 (10th Cir.2004) (holding that evidence of drugs in the defendant's trash cover, while potentially indicating only personal use, was sufficient to establish probable cause because "all that is required for a valid search warrant is a fair probability that contraband or evidence of a crime will be found in a particular place") (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 543 (1983) ).
Accordingly, based on the totality of the circumstances, we hold that the presence of marijuana residue found in a bag pulled from *899 Turner's garbage, the anonymous tip that Turner was "selling, using and storing" narcotics in his home, and Turner's history of drug-related arrests, in conjunction, formed a substantial basis to conclude that probable cause existed to search his home for the presence of contraband or other evidence. See Sinapi, 359 N.C. at 398, 610 S.E.2d at 365 ; Beam, 325 N.C. at 221, 381 S.E.2d at 329. Therefore, we affirm the trial court's denial of defendant's motions to suppress on this ground.
II. Search of the Vehicle
Defendant next argues that the search of the Volkswagen in Turner's driveway exceeded the scope of the warrant issued to search Turner's residence. After careful consideration, we agree.
*342 There is long-standing precedent in North Carolina and other jurisdictions that, "[a]s a general rule, 'if a search warrant validly describes the premises to be searched, a car on the premises may be searched even though the warrant contains no description of the car.' " State v. Courtright, 60 N.C.App. 247, 249, 298 S.E.2d 740, 742 (1983) (emphasis added) (quoting State v. Reid, 286 N.C. 323, 326, 210 S.E.2d 422, 424 (1974) ); see also State v. Logan, 27 N.C.App. 150, 151, 218 S.E.2d 213, 214-15 (1975). Because "[a]uthority to search a house gives officers the right to search cabinets, bureau drawers, trunks, and suitcases therein, though they were not described," Reid, 286 N.C. at 326, 210 S.E.2d at 424, it follows that the search of other personal property belonging to the defendant-such as a vehicle-would also be authorized, assuming that the property was within the curtilage of the home. See, e.g., Courtright, 60 N.C.App. at 250-51, 298 S.E.2d at 742-43 (holding that the search of the defendant's vehicle parked six or seven inches into the yard of the defendant's residence was lawful even though the vehicle was not identified in the search warrant because it was within the curtilage of the premises, which the Court noted is an area "within which the owner or possessor assumes the responsibilities and pleasures of ownership or possession").
Here, it is undisputed that the Volkswagen parked in Turner's driveway was within the curtilage of the residence that the officers were authorized to search pursuant to the warrant. Therefore, the State argues that the holdings of Courtright, Reid, and Logan require us to affirm the trial court's denial of defendant's motion to suppress. We are unpersuaded.
The crucial fact distinguishing this case from Courtright, Reid , and Logan relates to law enforcement officers' knowledge about the ownership and control of the vehicle. In each of the cases relied on by the State, the individual associated with the premises identified in the search warrant unquestionably owned and operated the vehicle that was searched at that location. See Courtright, 60 N.C.App. at 249, 298 S.E.2d at 741 (1983) (noting that the officers had observed the vehicle at the defendant's home and knew it was registered in the defendant's name before searching it); Reid, 286 N.C. at 326-27, 210 S.E.2d at 424 (emphasizing "the wisdom of the cases which hold a search warrant for contraband on specifically described premises, contemplates the search of any automobile belonging to the owner and parked thereon") (emphasis added); Logan, 27 N.C.App. at 151, 218 S.E.2d at 214 (characterizing the vehicle searched at the defendant's premises as the "defendant's automobile").
*343 Here, the target of the search was Turner. However, officers knew prior to searching the Volkswagen in the driveway that it did not belong to Turner. At the evidentiary hearing on defendant's motions to suppress, Det. Barber testified that prior to the search, he had never seen the Volkswagen at Turner's residence. He further testified that after the officers went into Turner's home, they established that the vehicle was being rented by Ms. Doctors, operated by defendant and Ms. Doctors, and that Turner had neither dominion nor control over the vehicle.
These facts distinguish this case from Courtright, Reid , and Logan. The reasoning justifying the holdings of those opinions simply does not apply here. We note that our appellate courts have yet to determine the precise issue raised in this case-whether the search of a vehicle rented and operated by an *900 overnight guest at a residence described in a search warrant may be validly searched under the scope of that warrant. However, we find guidance in the holdings from this Court addressing the constitutionality of searches of persons at the premises identified in a validly executed search warrant and from other jurisdictions addressing the dispositive issue before us.
The seminal case on the constitutionality of searching visitors at a location identified in a valid warrant is Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In Ybarra, police officers obtained a warrant supported by probable cause to search a tavern at which the defendant was a patron. Id. at 88, 100 S.Ct. at 340-41, 62 L.Ed.2d at 243. The defendant was searched pursuant to that warrant, and the officers found drugs in his pocket. Id. at 89, 100 S.Ct. at 341, 62 L.Ed.2d at 243. The Court held:
It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.
Id. at 91, 100 S.Ct. at 342, 62 L.Ed.2d at 245 (citations omitted).
*344 Because "[t]he Fourth and Fourteenth Amendments protect 'the legitimate expectations of privacy' of persons, not places," id., we are not persuaded by the State's argument that the search of the Volkswagen was permissible under the scope of the warrant solely because the vehicle was within the curtilage of the residence to be searched. The State's proffered rule would allow officers to search any vehicle within the curtilage of a business identified in a search warrant, or any car parked at a residence when a search is executed, without regard to the connection, if any, between the vehicle and the target of the search. We decline to stray so far from the reasoning of Ybarra and our cases applying that decision. See, e.g., State v. Smith, 222 N.C.App. 253, 729 S.E.2d 120 (2012) ; State v. Cutshall, 136 N.C.App. 756, 526 S.E.2d 187 (2000).
Instead, we find persuasive the reasoning of courts in other jurisdictions holding that a warrant authorizing the search of a house or business does not automatically cover the search of a vehicle owned, operated, or controlled by a stranger to the investigation. See, e.g., State v. Barnett, 788 S.W.2d 572, 575 (Tex.Crim.App.1990) (citing Ybarra in support of its holding that "the presence of an automobile on suspected premises, without more, does not give rise to search that automobile"); Dunn v. State, 292 So.2d 435 (Fla.Dist.Ct.App.1974) (holding that a search of the defendant's van was unlawful even though it was parked in the driveway of the premises identified in a valid search warrant because the officers had no indication that the vehicle was connected in any way to the target of the search). We note that the United States Courts of Appeals are split with regard to whether the target of the investigation must actually own the vehicle in question, or whether objective indicia of control are sufficient to justify the search. See, e.g., U.S. v. Pennington, 287 F.3d 739, 745 (8th Cir.2002) (noting that a warrant to search a residence includes vehicles within the curtilage "except, for example, the vehicle of a guest or other caller"); U.S. v. Patterson, 278 F.3d 315, 318-19 (4th Cir.2002) (noting that the scope of a search warrant includes "automobiles on the property or premises that are owned by or are under the dominion and control of the premises owner or which reasonably appear to be so controlled"); U.S. v. Evans, 92 F.3d 540, 543-44 (7th Cir.1996) (holding that "it does not matter whose [vehicle] it is unless it obviously belonged to someone wholly uninvolved in the criminal activities going on in the house").
Based on the foregoing principles, we conclude that the search of the Volkswagen exceeded the scope of the warrant to search *901 Turner's residence for contraband. Therefore, the evidence found in the vehicle *345 is subject to suppression. See State v. Larkin, ---N.C.App. ----, ----, 764 S.E.2d 681, 687 (2014).
Nevertheless, the State argues that the evidence gained from the search of the Volkswagen should not be excluded, because it falls under the "good faith exception" to the exclusionary rule. N.C. Gen.Stat. § 15A-974(a)(2) (2013) provides "[e]vidence shall not be suppressed ... if the person committing the violation of the provision or provisions under this Chapter acted under the objectively reasonable, good faith belief that the actions were lawful." The State contends that because Det. Barber testified it was his department's policy to search all vehicles within the curtilage of the premises for which they had a search warrant, regardless of the vehicle's connection to the target of the search, the officers had an "objectively reasonable, good faith" belief that the search of the Volkswagen was permissible. We disagree.
The good faith exception to the exclusionary rule stems from the United States Supreme Court's holding in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In declining to apply the exclusionary rule where the investigating officers acted in objectively reasonable reliance on a warrant issued by a magistrate which was later held to be invalid, the Court reasoned that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. at 921, 104 S.Ct. at 3419, 82 L.Ed.2d at 697. As our Supreme Court has stated, "[t]he exclusionary rule was designed to deter police misconduct, not a judge's errors." State v. Welch, 316 N.C. 578, 588, 342 S.E.2d 789, 794 (1986).
Here, contrary to the State's contention, the error in searching the Volkswagen lies solely with the officers conducting that search, not the magistrate who issued the warrant for Turner's home. As evidenced by Det. Barber's testimony that he had seen neither the Volkswagen nor defendant prior to the execution of the search, it is evident that the magistrate had no knowledge of them either. Therefore, because the misconduct in this case is attributable to the police (either in the form of their internal policies, as Det. Barber contended, or the isolated actions of the officers in this case), the good faith exception to the exclusionary rule is inappropriate here.
In sum, we hold that the search of the vehicle exceeded the scope of the search warrant and violated defendant's rights under the Fourth Amendment. Accordingly, we reverse the trial court's denial of defendant's motion to suppress evidence obtained from the vehicle.
*346 Finally, we note that the record raises the question of whether contraband attributable to defendant was found during the search of Turner's home, which we held above was valid.[3] The inventory of items seized does not specify which items were found in the vehicle, which were found in the home, or where in the home items were found. Because we are unable to determine which, if any, of defendant's convictions appealed were based on evidence gained from the valid search of the home, we remand this matter to the trial court to determine what portion of the contraband was subject to suppression consistent with this decision and the resulting effect on each of the charges for which defendant was convicted. If the trial court is unable to make a determination as to what portion of the contraband was found in the house as opposed to the vehicle, then all underlying judgments must be vacated.
Conclusion
After careful review, we conclude that the warrant to search Turner's residence was valid and supported by probable cause. However, the search of the Volkswagen exceeded the scope of the warrant, and any evidence obtained thereby is subject to suppression.
*902 REVERSED AND REMANDED WITH INSTRUCTIONS.
Judges BRYANT and DAVIS concur.

As will be discussed in more detail below, the precise nature of the contraband found in the vehicle is unclear from the record.

The State does not contest on appeal whether defendant has standing to challenge the officers' search of Turner's home.

During the suppression hearing, counsel for defendant conceded that contraband was found in the room that defendant and his companion were occupying. Neither defendant nor the State addresses in their respective briefs this fact or how it might affect the analysis of the legal issues raised on appeal.